Fred W. JACKSON

v.

NATIONAL LINEN SERVICE CORPO-
RATION, and Hysan Products
Company.

Civ. A. No. 64-C-63-A.

United States District Court
W. D. Virginia,
Abingdon Division.

Dec. 28, 1965.

Bradley Roberts, Stant & Roberts, Bristol, Va., for Fred W. Jackson.

Robert B. Davis, Bristol, Va., for National Linen Service Corp.

G. R. C. Stuart, Penn, Stuart & Miller, Abingdon, Va., for Hysan Products Co.

DALTON, Chief Judge.

This is an action in warranty in which plaintiff, a citizen of Virginia, seeks recovery against defendant Hysan, incorporated under the laws of Illinois, and defendant National Linen Service, incorporated under the laws of Delaware, for injuries sustained when "Zep Flo", a solvent manufactured by Hysan and distributed by National Linen, exploded while plaintiff was using it to unstop a sink trap. The product was sold to plaintiff, the maintenance supervisor for Bristol Redevelopment and Housing Authority, by a salesman of National Linen Service Corporation.

Plaintiff seeks judgment against the defendants, jointly and severally, in the sum of $75,000.

On February 12, 1965, defendant Hysan filed a motion to dismiss, alleging that the complaint does not state a claim upon which relief can be granted and that Va.Code Ann. § 8–81.2 (Supp. 1964), does not authorize this court to assert jurisdiction over it in this case.

According to Mr. Joel Brownstein, the Vice-President of Hysan Products, that company is a "private label business," and "Zep Flo" is a "private label name name or product" which Hysan makes and sells to National Linen for National Linen. (Deposition of Joel Brownstein, p. 53). The court interprets Mr. Brownstein's testimony as meaning that the two companies are entirely independent; that is, that National Linen does not sell on a consignment or agency basis, but rather buys the product outright, after which time it has no connection with Hysan with respect to sales and distribution.

From the evidence, it seems that Hysan Products kept no organization whatsoever (i. e., no office, salesmen, etc.) in the State of Virginia, but from time to time it did fill orders directly to Virginia customers and sent advertising brochures to these customers. (Deposition of Joel Brownstein, pp. 3, 5, 22, and 28.) As near as Mr. Brownstein was able to estimate, Hysan's average annual sales for the period in question were between four and five million dollars, about twenty-five thousand dollars of which was derived from sales in Virginia (the twenty-five thousand dollar figure would be a maximum figure). (Deposition of Joel Brownstein, pp. 6 and 46.) Brownstein testified that there were several other states in the same category, with respect to percentage of total sales, as Virginia. (Deposition of Joel Brownstein, p. 46.) The court assumes from the way in which this evidence was presented that this represents Hysan's *direct* sales to Virginia customers, and does not take into account the sale of Hysan products which may have originally been sold to independent companies such as National Linen.

The jurisdictional statute involved is Virginia's new "long-arm" statute, Va. Code Ann. § 8–81.2 (Supp.1964), enacted by the General Assembly on March 31, 1964. This section of Chapter 4.1 reads as follows:

*When personal jurisdiction over person may be exercised*

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

(1) Transacting any business in this State;

(2) Contracting to supply services or things in this State;

(3) Causing tortious injury by an act or omission in this State;

(4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State;

(5) Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use, consume, or be affected by the goods in this State, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(6) Having an interest in, using, or possessing real property in this State;

(7) Contracting to insure any person, property, or risk located within this State at the time of contracting.

(b) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him; provided, however, nothing contained in this chapter shall limit, restrict or otherwise affect the jurisdiction of any court of this State over foreign corporations which are subject to service or process pursuant to the provisions of any other statute.

The instant case involves three main questions:

(1) Can jurisdiction be asserted under the terms of the statute itself? In other words, do the acts alleged bring the defendant within the terms of the Virginia "long-arm" statute?

(2) If jurisdiction can be so asserted, would this violate the due process considerations of the United States Constitution?

(3) Will the statute be applied retroactively in this case? (It will be noted that the cause of action arose in 1963 and the statute was not passed until 1964.)

The court recognizes the possibility that at the time of the injury plaintiff had no cause of action at all in warranty as the Virginia statute which abolished the requirement of privity in all warranty actions, Va.Code Ann. § 8–654.2 (Cum. Supp.1964), was not passed until 1964, whereas the cause of action arose in 1963. The court will overrule defendant's motion to dismiss on this point (failure to state a claim upon which relief may be granted) because it feels that this particular question should be decided at the trial of the case, after the filing of briefs and presentation of evidence, rather than on a pre-trial motion.

As a preliminary matter we must consider the question of whether a Federal District Court may take jurisdiction under the new Virginia statute.

Although there was previously a conflict in the cases on this point (based mainly on the substance-procedure distinction with respect to the Erie doctrine), the answer now is definitely "yes" under the new Federal Rule 4(e) entitled "Service Upon Party Not Inhabitant of or Found Within State." There is no question but that this court can use the Virginia "long-arm" statute to extend its jurisdiction over nonresident defendants.

There has been some confusion in the past as to just what type of action warranty is, as it sounds in contract but has recovery in tort. The problems which this hybrid action might raise with respect to jurisdiction have been eliminated by the draftsman of the "long-arm" statute by the inclusion of a special provision, paragraph (a) (5), supra, for warranty actions.

It seems clear to this court that jurisdiction may be asserted over the defendant in this case under this paragraph of § 8–81.2. It will be noted that it is not necessary for the defendant to be

"doing business" in the technical sense to fall within the statute, but only that he be engaged in some persistent course of conduct *or* derive substantial revenue from goods used in this State.

 The Court finds from the testimony and the exhibits attached to the deposition of Mr. Brownstein that defendant Hysan both derived substantial revenue from the sale of its product in Virginia and engaged in a persistent course of conduct by shipping the product directly to purchasers in this State. Although twenty-five thousand dollars might seem a small amount when compared to Hysan's total volume of sales, the court believes that it is substantial enough to satisfy the Virginia "long-arm" statute. Further, it is clear that the defendant was aware that its products were being sold in Virginia and so might reasonably have expected plaintiff to use and be affected by it. The court finds that the facts of this case bring the defendant Hysan within the scope of the Virginia "long-arm" statute.

We turn now to the question of whether this court may constitutionally subject the defendant to *in personam* jurisdiction under the Virginia statute. There has been a trend of constant expansion of personal jurisdiction over non-resident defendants since the United States Supreme Court's decision in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and especially since the further development of the theory of International Shoe in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In conjunction with these two decisions the cases of Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), and Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935) should be noted. Using the criteria set down by the Supreme Court as a starting point, several states have significantly expanded the interpretation of their existing statutes, the trend seeming to be in the direction of pushing state jurisdictional power to the outer limits of due process. See, for example: Shealy v. Challenger Mfg. Co., 304 F.2d 102 (4th Cir. 1962); Green v. Robertshaw-Fulton Controls Co., 204 F. Supp. 117 (S.D.Ind.1962); Johns v. Bay State Abrasive Products Co., 89 F.Supp. 654 (D.Md.1950); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961); Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957); Adamek v. Michigan Door Co., 260 Minn. 54, 108 N.W.2d 607 (1961); Shepard v. Rheem Mfg. Co., 249 N.C. 454, 106 S.E.2d 704 (1959); Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 (1951).

 This court upholds the constitutionality of paragraph (a) (5) of the Virginia "long-arm" statute, as the use of the International Shoe due process words "regularly," "persistent," and "substantial," place this provision well within the permissible limits of due process as set down by the Supreme Court. It will be observed that this language restricts the Virginia statute considerably when compared to the "single act" provisions of the "long-arm" statutes of some other states. Such statutes permit jurisdiction over a non-resident to be asserted on the basis of a single act of the defendant. In most of these statutes, there is no separate section for breach of warranty actions, jurisdiction in those cases being asserted under the "tortious act" paragraph. The first statute of this type was that of Illinois, and the leading case under it is Gray v. American Radiator & Standard Sanitary Corp., supra. Defendant has cited this court to two cases from the United States Court of Appeals for the Seventh Circuit, Orton v. Woods Oil & Gas Co., 249 F.2d 198 (7th Cir. 1957), and Insull v. New York World-Telegram Corp., 273 F.2d 166 (7th Cir. 1959), which it claims are helpful in that they interpret the Illinois "long-arm" statute, "a prototype for the Virginia long-arm statute. * * *" However, these cases were decided before the Supreme Court of Illinois made an authoritative interpretation of that statute in the Gray case, and so they are now of

little or no value. In Gray, an Illinois plaintiff brought an action for breach of warranty against an Ohio valve manufacturer for a defective valve. The Ohio manufacturer had shipped the valve to a Pennsylvania corporation which had installed it in a water heater. The heater was shipped to Illinois where plaintiff purchased it. Thereafter, the heater exploded, causing plaintiff serious injury. The Illinois Supreme Court sustained the exercise of personal jurisdiction over the Ohio valve manufacturer. The failure of the defective valve, the last event necessary to make the manufacturer liable for a tortious act, occurred in Illinois. The case of Nixon v. Cohn, 62 Wash.2d 987, 385 P.2d 305 (1963), follows Gray. Note also: Anderson v. Penncraft Tool Co., 200 F.Supp. 145 (N.D.Ill.1962); McMahon v. Boeing Airplane Co., 199 F.Supp. 908 (N.D.Ill. 1961); and Rensing v. Turner Aviation Corp., 166 F.Supp. 790 (N.D.Ill.1958).

Although the Supreme Court has not passed directly on single act provisions which relate to breach of warranty or tortious injury, it has left little doubt that such provisions will be held constitutional. The McGee case, supra, involved a non-resident insurance company which mailed one reinsurance certificate into California, its only contact with that State. The Supreme Court held that California courts could constitutionally take jurisdiction under a statute subjecting anyone who insured a risk within the state to *in personam* jurisdiction. It is significant to note that in deciding McGee the Supreme Court cited Smyth v. Twin State Improvement Co., supra, and S. Howes Co. v. W. P. Milling Co., 277 P.2d 655 (Okla.1954), for the proposition that the due process clause does not preclude the exercise of personal jurisdiction provided there are "substantial connections with the state." Both these cases involved an isolated or single act transaction, but nevertheless the non-resident defendants were held to have had sufficient contacts with the forum state. The Court also referred to Hess v. Pawloski, supra, and Henry L. Doherty & Co.

v. Goodman, supra, in saying that it is sufficient for due process purposes that that suit was based on a contract which had a substantial connection with the state. Hess was the landmark decision upholding the non-resident motorist statutes (in effect, a more restrictive form of a modern single act statute) and Doherty subjected a non-resident individual whose only contact with the state was that he had established an office there for dealing in securities to *in personam* jurisdiction. For some time, it was thought that these two cases could not be read beyond their facts and that jurisdiction was upheld only because of the special and extraordinary interest that a state had in regulating the securities business and the highways of the state. The non-resident motorist cases, it was said, were based on the implied "consent" of anyone using the highways to be sued in the courts of that state. The McGee case would seem to be at least a preliminary indication that "implied consent" and "special interest" were not the true bases of these two decisions. The July 13, 1965 proceeding in Rosenblatt v. American Cyanamid Co., 86 Sup.Ct. 1 (1965), is particularly helpful. This was a proceeding before Mr. Justice Goldberg in chambers on an application for a stay of judgment pending appeal from a decision of the New York Court of Appeals sustaining the trial court's denial of defendant's pre-trial motion to dismiss the complaint for want of personal jurisdiction. Plaintiff had filed a complaint against defendant in the New York courts based upon an alleged conspiracy to convert trade secrets, and asked for injunctive relief and damages. Service was made upon the defendant, a United States citizen, in Rome, Italy, under the New York "long-arm" statute which provides for *in personam* jurisdiction on the basis of the commission of a "tortious act" in the state. The question for decision was whether plenary review by the United States Supreme Court on defendant's claim that the statute as applied to him was unconstitutional was likely; if so, a stay should

be granted. Mr. Justice Goldberg concluded that the constitutional argument was insubstantial. He said:

> The logic of this Court's decisions in International Shoe Co. v. State of Washington, [citation] and McGee v. International Life Ins. Co., [citation] supports the validity of state "long arm" statutes such as the one involved here which base *in personam* jurisidction upon commission of a "tortious act" in the forum State. Since those decisions a large number of States have enacted statutes similar to the one here. In cases under these statutes in state and federal courts, jurisdiction on the basis of a single tort has been uniformly upheld [citing Smyth v. Twin State Improvement Corp., supra; Nelson v. Miller, supra; Painter v. Home Finance Co., 245 N.C. 576, 96 S.E.2d 731 (1957); and Hutchinson v. Boyd & Sons Press Sales, Inc., 188 F.Supp. 876 (D.Minn.1960)]:

> "Indeed, the constitutionality of this assertation of jurisdiction, today, could only be doubted by those determined to oppose the clear trend of the decisions. This situation is exactly that of the nonresident-motorist statutes, which were long ago upheld, except that the highways are not directly involved. It is now clear, if it was ever in doubt, that the nonresident-motorist cases were not really based on 'consent' but on the interest of the forum State and the fairness of trial there to the defendant." Currie, The Growth of the Long Arm, 1963 U.Ill.Law Forum 515, 540, 86 S.Ct. at 3, 4.

Mr. Justice Goldberg observed that the case of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), held that what was essential in each case is "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." 357 U.S. at 253, 78 S.Ct. at 1240. He further stated that "Currie has interpreted and generalized the Hanson test as a requirement

'that the defendant must have taken voluntary action calculated to have an effect in the forum state.' Currie, op. cit., at 549."

Thus, if such "single act" provisions are constitutional, *a fortiori* paragraph (a) (5) of Virginia's statute is constitutional. This problem has been discussed generally in Gibson & Freeman, Annual Survey of Virginia Law—Business Associations, 50 Va.L.Rev. 1265 (1964), (the authors arguing *against* constituionality of certain parts of the statute); Smithers, Virginia's "Long Arm" Statute: An Argument for Constitutionality of Jurisdiction over Non-resident Individuals, 51 Va.L.Rev. 712 (1965); Note, 51 Va.L.Rev. 719 (1965). Note especially the comprehensive treatment accorded paragraph (a) (5) of the statute in "Jurisdiction under 'Long-Arm' Statute over Breach of Warranty Actions," 22 Wash. & Lee L.Rev. 152 (1965).

The final question concerns whether the statute may be applied retroactively to cover a cause of action which arose before the statute became effective. The court sees no objection to thus applying the statute in this case. There is no express prohibition in the Virginia Constitution against a statute operating retrospectively. Va.Const. Art. 4, § 58 (1902). See also Whitlock v. Hawkins, 105 Va. 242, 53 S.E. 401 (1906). Several other decisions have permitted similar statutes to operate retroactively. McGee v. International Life Ins. Co., supra; Chovan v. E. I. DuPont de Nemours & Co., 217 F.Supp. 808 (E.D.Mich.1963); Nelson v. Miller, supra. As defendant points out, the primary question for consideration is whether the statute affects "vested rights," as Virginia has held that a statute which does not affect vested rights may operate retrospectively. Ferguson v. Ferguson, 169 Va. 77, 192 S.E. 774 (1937).

Defendant calls special attention to the cases of Ferguson v. Ferguson, supra, and Gloucester Realty Corp. v. Guthrie, 182 Va. 869, 30 S.E.2d 686 (1944), in support of its contention that the statute in this case should not be retro-

spectively applied. The Ferguson case dealt with the application of a statute of limitations, and the Virginia Court quoted Ruling Case Law for the proposition that *statutes of limitation* are presumed to be prospective in application. 169 Va. at 85, 192 S.E. 774. The decision went on to deal with general principles governing the construction of statutes of limitation, and this court reads the Ferguson case as confined to the question presented there—whether a statute of limitations may operate retroactively. There is, to be sure, a general proposition that statutes have only prospective application, but as pointed out in the Gloucester Realty case, supra, this rule is relaxed in cases of statutes which are classified as remedial or where they only affect questions of procedure. 182 Va. at 873, 30 S.E.2d 686. The court in Gloucester said that the rule of relaxation would not be applied in that case, however, because contract rights were involved. Because of this difference in the type of statute involved, it seems evident that the Gloucester case is not applicable on its facts to the case at bar.

 As a general rule, a party has no vested rights in matters of procedure, Link v. Receivers of Seaboard Air Line Ry., 73 F.2d 149, 151 (4th Cir. 1934); 82 C.J.S. Statutes § 416 (1953), and although there are no reported Virginia decisions directly on point, it is the opinion of this court that the "long-arm" statute was intended to be procedural in character, not creating a new right but rather providing a means by which existing rights might be secured. For this reason, there is no objection to applying the statute retroactively in the instant case.

An order will be entered overruling defendant's motion to dismiss for lack of personal jurisdiction.

The Court is of the opinion that this opinion and the interlocutory order entered herein involve a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate determination of this litigation, pursuant to the provisions of Title 28, U.S.C. sec. 1292(b), further proceedings will be stayed herein pending such appeal.