Charles F. WILLIS, Jr., Plaintiff,

v.

SEMMES, BOWEN & SEMMES, a partnership of the State of Maryland, David R. Owen, managing partner, Cleaveland D. Miller, a partner, David F. Albright, a partner, and Norman P. Ramsey, William A. Fisher, Jr., John H. Mudd, George D. Hubbard, James P. Garland, James D. Peacock, David M. Buffington, William R. Dorsey, III, A. MacDonough Plant, Benjamin R. Goertemiller, H. Thomas Howell, David E. Belcher, Robert E. Mittelman, William R. Levasseur, Thomas W. W. Haines, Alan N. Gamse, Sidney G. Leech, Geoffrey S. Mitchell, Charles E. Iliff, Jr., Francis J. Gorman, James E. Gray, Partners, Semmes, Bowen & Semmes, a partnership of the State of Maryland, Defendants.

Civ. A. No. 77–539–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Nov. 22, 1977.

Frederick H. Miller, Jr., Miller, Perkins & Givens, Leesburg, Va., Jeffrey B. Rice, Fairfax, Va., for plaintiff.

Richard L. Williams, W. Carter Younger, McGuire, Woods & Battle, Richmond, Va., for defendants.

## OPINION AND ORDER

CLARKE, District Judge.

Plaintiff, Charles F. Willis, Jr., brings this action against a law partnership, Semmes, Bowen & Semmes (hereinafter Semmes), alleging malpractice, breach of contract, conversion and conspiracy. Plaintiff is a citizen of Virginia, defendant partnership carries on its activities in Maryland and its partners are citizens of Maryland. The amount in controversy exceeds $10,000 exclusive of interest and costs. Jurisdiction is grounded in diversity. 28 U.S.C. § 1332.

Defendant has made two motions to dismiss under Rule 12(b), Federal Rules of Civil Procedure. Since Rule 12 contemplates a single motion and defendants' two applications were made simultaneously, the Court will treat them as one motion. Defendant first seeks dismissal of the complaint against four individuals on the ground that they are not partners of Semmes, so that service on one of the Semmes partners under §§ 8–59.1 (1957) and 8–81.2 (Supp.1976), *Va.Code Ann.* cannot effect service upon them. Plaintiff in his October 5, 1977, response to this motion has conceded this issue and therefore, defendants Ambler H. Moss, Lawrence Perin, Rignal W. Baldwin and Thomas J. S. Waxter are dismissed from this action. Rules 12(b)(4), (5); 21, Fed.R.Civ.P.

Defendant also moves under subsection (b)(2) of Rule 12 asserting that defendant has insufficient contacts with the forum state to subject it by way of Virginia's long arm statute, *Va.Code Ann.* § 8–81.2 (Supp. 1976), to the jurisdiction of this Court. In addition, defendant seeks dismissal for plaintiff's failure to join an indispensable party in the malpractice and breach of contract counts of the Complaint, Rules

12(b)(7) and 19; for failure to state a claim, join necessary parties, and name the real party in interest in the conversion count, Rules 12(b)(6), (7), 19 and 17; and for failure to join necessary parties in the conspiracy count, Rules 12(b)(7) and 19. Finally, defendant seeks a more definite statement of the conspiracy allegations. Rule 12(e).

### I.

Before dealing with the several other questions raised by defendants' motion, the Court must first decide if it has jurisdiction over the defendants' person, for lacking this the remainder of its ruling would be wasted effort. *Arrowsmith v. United Press International,* 320 F.2d 219, 221 (2d Cir. 1963).

Plaintiff has served the defendant with process in this action by serving the Secretary of the Commonwealth of Virginia, who, in turn forwarded to three partners of Semmes in Maryland copies of the Complaint by certified mail. Service on a partner is deemed service on the partnership and each individually named partner. *Va. Code Ann.* § 8–59.1 (1957). Serving a non-resident party through the Secretary of the Commonwealth is permitted where the basis of jurisdiction is under the Virginia long arm statute. §§ 8–81.2; 8–81.3, *Va.Code Ann.* (1976 Supp.). Virginia's provisions for both the mechanics of service and the predicate for in personam jurisdiction are available in a Federal Court action through Rule 4(e), (f), Fed.R.Civ.P.[1] Defendant does not dispute the sufficiency of process or its service but does deny that there is any basis for acquiring jurisdiction under Virginia's long-arm statute.

The background of the dispute between plaintiff and his former attorneys is complex but we will summarize the facts as briefly as possible. Plaintiff in May of 1972

was voted out of office as Chairman of the Board and Chief Executive Officer of Alaska Airlines (hereinafter Alaska) at a meeting of the board of directors. At issue at that meeting, according to plaintiff, was the transfer of effective control of Alaska to the Alaskan Continental Development Corporation (hereinafter Alco). Plaintiff has since sought through legal action and negotiation to rectify what he considers the wrong done to him in June 1972. In accordance with this plan, he retained Semmes as counsel in 1972 and it represented plaintiff in various matters involving his running dispute with Alco and Alaska. The phase of Semmes' legal representation pertaining to Virginia was a Chapter XI bankruptcy proceeding brought in this Court in 1973 on behalf of plaintiff and Great Alaska Corporation (hereinafter GAC), a closed corporation wholly owned and managed by plaintiff. In that proceeding, settlement agreements among Alco, Alaska, GAC and plaintiff were signed and submitted to the Court. By the terms of these agreements, plaintiff and GAC adjusted their disputes with Alco over ownership of stock in various corporations, settled payment under a promissory note, and obtained payment of money owed plaintiff by Alaska. More pertinently plaintiff agreed to dismiss various pending lawsuits and administrative proceedings brought against Alaska and Alco, and further agreed not to interfere in any manner with Alaska and Alco, including but not limited to refraining from seeking further judicial or administrative redress, contacting employees, agents, contractors, etc. of the two companies or communicating with public officials or the news media regarding them. Finally, the agreement was to be a complete mutual release of all rights, claims and demands among the parties.

---

1. Rule 4(e) provides in pertinent part:

 Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state . . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule.

 Rule 4(f) provides in pertinent part:

 All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

This settlement of May 18, 1973, was approved by the bankruptcy court. Shortly afterwards on June 15, 1973, the Court, having found that plaintiff and GAC had violated those provisions calling for them to take no further action to interfere with Alco and Alaska, entered a restraining order to enforce these terms. Plaintiff's complaint alleging legal malpractice and breach of contract focuses chiefly on the May 18, 1973, settlement agreements and the June 15, 1973, restraining order. These documents and the bankruptcy proceeding underlying them also provide defendant's only nexus with Virginia.

Defendant acknowledges it acted as counsel for plaintiff during this period of time but denies it did so in Virginia in the bankruptcy proceedings. It denies that it had any contact with Virginia sufficient to meet the requirements of Virginia's long arm statute or the requisites of the due process clause of the Fourteenth Amendment. Although a plaintiff cannot normally be put to his proof on a motion to dismiss, if jurisdictional facts are placed in issue, it is up to plaintiff to prove their existence. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Haynes v. James H. Carr, Inc.*, 427 F.2d 700 (4th Cir. 1970). The Court's inquiry is twofold: if the plaintiff meets his jurisdictional burden under state law, he must further show that such an assertion of jurisdiction comports with Constitutional requirements of due process.[2] *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Haynes v. James H. Carr, Inc., supra; Arrowsmith v. United Press International, supra; Pulson v. American Rolling Mill Co.*, 170 F.2d 193 (1st Cir. 1948).

On the issue of who represented plaintiff in the Virginia bankruptcy proceedings, defendant claims the law firm of Boothe, Prichard and Dudley (hereinafter Boothe) did so independently of Semmes. This view is clearly not supported by the facts. The affidavit of Cleaveland D. Miller, a Semmes partner, which was submitted in support of defendants' position is equivocal at best and acknowledges Semmes contacted Boothe and arranged for its legal representation of plaintiff in Virginia as local counsel. Moreover, it is clear from the papers submitted by plaintiff, especially the two settlement agreements and the draft of the restraining order all signed by Cleaveland D. Miller that Mr. Miller took an active if not a dominant part on plaintiff's behalf in the Virginia litigation. The Court finds as a fact that Boothe, serving as local counsel in Virginia pursuant to Rule 7 of the Rules of Court for the Eastern District of Virginia, enabled Semmes through Boothe's good offices to continue its representation of plaintiff in Virginia and further that Semmes through Cleaveland D. Miller took an active role in the Virginia litigation independently of Boothe's activity.

These facts in the light of the complaint's allegations are sufficient to subject the defendant to in personam jurisdiction in this Court pursuant to § 8–81.2(a)(1), (2), (3), *Va.Code Ann.* (1976 Supp.) as implemented by Rule 4(e) and (f), Fed.R.Civ.P. The pertinent language of the Virginia long-arm statute provides:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

(1) Transacting any business in this State;

(2) Contracting to supply services or things in this State;

(3) Causing tortious injury by an act or omission in this State.

2. In a diversity case, the amenability of defendant to personal jurisdiction in federal court under a state long arm statute is circumscribed by the due process clause of the Fourteenth Amendment. *Pulson v. Am. Rolling Mill Co.*, 170 F.2d 193, 194 (1st Cir. 1948). Where the competence of the court is based on a federal question the due process guarantee stems from the Fifth Amendment, whether the basis for service derives from federal or state law. *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143 (7th Cir. 1975); *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F.Supp. 219, 232 (D.N.J.1966); 47 F.R.D. 96, 97 n. 75 (1968).

Since even a single act may constitute a transaction of business in Virginia under this statute, *Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664 (1971), it should be reasonably clear that Semmes' participation in the bankruptcy proceeding through its partner, Cleaveland D. Miller, and through the agency of local counsel more than meets the "transacting any business" ground for jurisdiction. Similarly, if as plaintiff alleges, Semmes' legal representation of him in Virginia was so deficient as to constitute actionable negligence, jurisdiction may also be grounded on defendants' "causing tortious injury by an act or omission in this State." Finally, since Semmes contracted to act as plaintiff's counsel and did so act in Virginia through Cleaveland D. Miller and the offices of local counsel, it is subject to jurisdiction for "contracting to supply services . . . in this State." Although the contract was made outside the state and did not specifically require performance in Virginia, jurisdiction may still be based on this provision since performance did actually occur within this state. *See Elefteriou v. Tanker Archontissa,* 443 F.2d 185, 188 (4th Cir. 1971). *Cf. Vinita Broadcasting Co. v. Colby,* 320 F.Supp. 902 (N.D.Okl.1971). In any event, on the facts of this case, the contract portion of the statute is overlapped by the two other grounds discussed earlier.

Once one or more of the enumerated bases under Virginia's long arm statute is found to exist, the inquiry must proceed further since § 8–81.2(b), *Va.Code Ann.* (1976 Supp.), provides in pertinent part:

When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

In this regard, defendant contends that the litigation to which the settlement agreements related had nothing to do with Virginia and the restraining order entered by the bankruptcy court while requiring adherence to the settlement provisions added nothing to their terms. Semmes argues, in effect, that if any negligent legal representation or counseling occurred, it took place prior to the Virginia litigation and therefore, while defendant may have conducted some activities in Virginia, plaintiff's cause of action did not arise from these. When this line of reasoning is viewed in the context of the complaint's allegations, its defects are readily apparent. The settlement agreement and restraining order are on plaintiff's theory of liability the very embodiment and finalization of a course of legal malpractice and breach of contract. There is no basis in law or logic to divorce the professional conduct prior to the Virginia litigation from the results in which that prior activity culminated. It is apparent, at least as to the legal malpractice claim, that plaintiff has sufficiently tied his cause of action to defendants' activity in Virginia. To the extent that plaintiff has alleged a breach of contract that is legally distinguishable from his claim of professional negligence and to the extent any of defendants' conduct constituting such a breach occurred in Virginia, he has also sufficiently connected this cause of action with Virginia. While it is clear from the complaint that some of the conduct complained of, whether *ex delicto* or *ex contractu,* occurred outside Virginia, there is no necessity to inquire what and how much occurred in which other state, as long as some of the elements of the cause of action arose in Virginia. *See, Malinow v. Eberly,* 322 F.Supp. 594, 599 (D.Md.1971) (construing a similar provision of Maryland's long arm statute). We conclude, therefore, that plaintiff has shown facts sufficient to establish in personam jurisdiction over the defendant on the legal malpractice and breach of contract counts of the complaint.

## II.

The cause of action for conversion involves different facts and different legal considerations. Plaintiff alleges that in February 1975 Semmes converted a promissory note in the face amount of $169,000 owned by GAC. The note, dated October 18, 1973, was made by Joseph Walker, Jr. and was payable to GAC or order. Plaintiff

claims that he placed the note in Semmes' possession to be held in trust for the benefit of individuals other than defendant and that acting as attorney for GAC Semmes wrongfully assigned the note for its own benefit. Semmes asserts that GAC made a valid assignment of the note to it and Philips, Gold & Company, a New York accounting firm, in payment of fees owed for legal and accounting services. Plaintiff denies this and claims he has repeatedly demanded by telephone from Virginia that the note be returned. At present, defendant is still in possession of the note in Maryland.

It seems clear that if the note was converted, the conversion took place in Maryland where Semmes, in possession of the instrument, refused to return it to plaintiff, not in Virginia where plaintiff's telephone demands were initiated. *Schenin v. Micro Copper Corp.*, 272 F.Supp. 523, 529 (S.D.N.Y.1967) (construing New York's highly similar long arm provision). Therefore, if jurisdiction is to be found, it must be under subsection (a)(4) of § 8–81.2, *Va.Code Ann.* (Supp.1976), which provides:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State.

■ Plaintiff has shown facts that meet the requirement of the first part of subsection (a)(4): an act or omission outside Virginia causing tortious injury to plaintiff in this state. However, whether he has sufficiently met his burden on the second tier of jurisdictional requisites is much more problematic. The meaning of this provision has itself been the subject of some confusion and conflicting interpretation. The inclusion of the first stated basis, "regularly does . . . business," is somewhat anomalous since well before the expansion of in personam jurisdiction occasioned by the landmark cases of *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), it had been held that "doing business" was a general predicate for in personam jurisdiction making defendant amenable to suit even on a cause of action unrelated to the business done in the state. *See, e. g., Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917) (Cardozo, J.). That being the case, if a defendant were found to be regularly doing business in Virginia he would be subject to personal jurisdiction here under traditional concepts, on any and all causes of action without the need of the long arm statute. *Moore-McCormack Lines, Inc. v. Bunge Corp.*, 307 F.2d 910, 914 (4th Cir. 1962). Therefore, from a historical perspective the meaning of this provision is far from clear. Nonetheless, it is not difficult to conclude that the limited activity of defendant in Virginia in May and June of 1973 did not amount to "regularly doing business" under § 8–81.2(a)(4).

Since there has been absolutely no showing that defendant "regularly solicits business" in Virginia, this ground is also inapplicable.

The next predicate, engaging "in any other persistent course of conduct" in Virginia is a more amorphous basis than the preceding two and there is a paucity of decisional law to guide the Court in determining its meaning. After examining with special care the language of the statute, the Court concludes that "persistent" is the key word in this provision since it prescribes the kind of conduct necessary to support jurisdiction. "Persistent" has been defined as:

> (1) Refusing to give up or let go; persevering obstinately;
>
> (2) Insistently repetitive or continuous;
>
> (3) Enduring.[3]

■ The word "other" is also significant in that it refers back to regularly doing business or soliciting business as persistent courses of conduct, thereby giving an indi-

---

**3.** *The American Heritage Dictionary of the English Language,* 978 (1969).

cation by example of what that phrase is intended to mean. One commentator has written that " . . . this requirement should be construed to be satisfied by any deliberate continuing contact with the state, such as regular advertising, distribution of catalogs, or knowing distribution of goods in the state."[4] By bearing in mind the natural meaning of the words used and by analogizing to what "doing" or "soliciting" business has been held to mean in prior decisions a workable standard as to whether a defendant is engaged in a "persistent course of conduct" in a particular factual situation may be formulated. At a minimum, the plaintiff must prove that the defendant maintained some sort of ongoing interactions with the forum state. It is also important to keep in mind that the tortious injury must be caused by the act or omission outside the state and not by the persistent course of conduct within.

In the case at bar, the note in question was dated October 18, 1973, and its alleged conversion occurred in February 1975. The last activity of defendant in Virginia apparently took place in June 1973. The claimed conversion of the note although arising in the context of a continuing attorney-client relationship was a completely separate event having no necessary connection with defendants' activities in Virginia. The note was not in existence when defendant ended its contacts with Virginia in 1973, its alleged conversion did not occur until early 1975 and plaintiff did not commence this action until August of 1977. Under these facts, the Court finds that while defendants' actions in Virginia in 1973 satisfied the first three subsections of Virginia's long arm statute, this limited, discrete quantum of activity does not amount to "persistent conduct" in this state within the meaning of the statute.

Since plaintiff has failed to show that defendant derives substantial revenue from goods used or consumed or services rendered in this state, these bases are also unavailable to support jurisdiction. Likewise there has been no evidentiary showing that defendant is subject to personal jurisdiction under § 8–81.2(a)(5), (6), (7).

The Court finds therefore that plaintiff has not proved a factual foundation for in personam jurisdiction under the long arm statute, § 8–81.2 *Va.Code Ann.* (1976 Supp.) for Count III of his complaint, the conversion cause of action, and this claim against the defendant is dismissed.

### III.

The claim based on conspiracy must be dismissed for similar reasons. Plaintiff states that the alleged conspiracy commenced in July 1975 when Semmes, at a time it was ostensibly acting as plaintiff's advocate, settled with Alco and Alaska a claim they had against the law firm. This settlement, plaintiff asserts, benefitted Semmes to the detriment of its client, fatally compromised Semmes' ability or willingness to represent plaintiff, and, in effect, constituted a conspiracy between plaintiff's counsel and his adversaries. The jurisdictional problem here is that plaintiff has failed to prove that the alleged conspiracy or any overt act in furtherance of it occurred in Virginia. Moreover, at the time of the conspiracy defendant apparently had no contacts with Virginia. Although such a conspiracy may be considered an act outside the state causing tortious injury in Virginia. *Path Instruments International Corp. v. Asahi Optical Co.*, 312 F.Supp. 805 (S.D.N.Y.1970) (construing a virtually identical provision of New York's long arm), the second tier of jurisdictional requisites under § 8–81.2(a)(4), as detailed above in regard to the conversion claim, have not been satisfied. The claim based on plaintiff's allegations of conspiracy is therefore DISMISSED.

### IV.

In reaching the above conclusions, the Court feels it has not given too restrictive a reading of Virginia's long arm statute. The Virginia Supreme Court has stated the purpose of the statute is " . . .

---

4. Note, *The Virginia "Long Arm" Statute*, 51 Va.L.Rev. 719, 749 (1965).

to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." *Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971); *Carmichael v. Snyder,* 209 Va. 451, 456, 164 S.E.2d 703, 707 (1968). However, this depiction of the law's purpose was derived directly from a statement of intent by the state legislature, a legislature that particularized in the statute what it deemed the permissible outer limits for the acquisition of personal jurisdiction consistent with due process. Therefore, insistence that these particulars be satisfied even in those situations where it could plausibly be argued that a lesser standard would meet due process requirements is a course mandated by legislative judgment. In *St. Clair v. Righter,* 250 F.Supp. 148 (W.D.Va. 1966), it was held that although plaintiff failed to show defendants' activity fit the specific requirements of Virginia's long arm statute, personal jurisdiction could nonetheless be sustained within what the court saw as the more extensive circumference of the due process clause. Although the case was not appealed its holding was later expressly disapproved in *Beaty v. M. S. Steel Co.,* 401 F.2d 157, 161 (4th Cir. 1968), *cert. denied,* 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969). In *Beaty,* a decision construing a similar Maryland statute, the Court of Appeals held:

> Thus, it is clear that at least where the legislature has acted, even though the statute may not go to the limits of due process, the courts of a state may not go further and assert jurisdiction over persons not embraced within that legislation.

*See also, Margoles v. Johns,* 157 U.S.App. D.C. 209, 483 F.2d 1212, 1220–21 (1973); *Marston v. Gant,* 351 F.Supp. 1122, 1125 (E.D.Va.1972).

■ In this regard, although the defendant may be properly before the court on one cause of action where personal jurisdiction has been obtained under the long arm statute, he needn't be subject to jurisdiction on causes of action that do not have the statutorily required nexus with forum activities. *Keckler v. Brookwood Country Club,* 248 F.Supp. 645 (N.D.Ill.1965). There is language in *Elefteriou v. Tanker Archontissa,* 443 F.2d 185, 189 (4th Cir. 1971), implying that it may be permissible for a defendant over whom jurisdiction has properly been obtained under one provision of the long arm statute, to be subjected to jurisdiction on other causes of action in the complaint which do not meet statutory requisites. The Court left the issue open but was apparently influenced in raising it by the possibility that the seaman-plaintiff, a Greek national, would have no other forum in which to bring his claim. This factor does not exist in the present case. Moreover, the Court's invitation in *Elefteriou* to ignore § 8–81.2(b) may be reconciled with *Beaty* in that the former involved federal question and admiralty jurisdiction while the later was a diversity case. The general consensus of the Circuit Courts of Appeal is that under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) a federal court sitting in diversity will not, and in the absence of Congressional rule-making cannot, assume in personam jurisdiction where the state courts of the forum state would not. *See, Arrowsmith v. United Press International* and the cases collected therein *supra* at 222, 223.

This Court's conclusion that it must observe the statute's requirement of a connection between the enumerated activities and the cause of action for which personal jurisdiction is sought is reinforced by the recent Supreme Court decision in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) where the Court struck down, as inconsistent with due process, a Delaware law allowing quasi-in-rem jurisdiction through the sequestration of defendant's property in the state. Although the holding in *Shaffer v. Heitner* involved a quasi-in-rem basis for jurisdiction the Court's opinion is highly relevant to the present case since it is the first major examination of state court jurisdiction since *Hanson v. Denckla, supra,* in 1957. The Court's distillation of the rule in *McGee* and *International Shoe Co.*—"the relationship among the defendant, the forum and the

litigation . . . [is] the central concern of the inquiry into personal jurisdiction." 433 U.S. at 204, 97 S.Ct. at 2580—undoubtedly reemphasizes the necessity, in those cases where the traditional predicates of jurisdiction have not been satisfied, of a connection between the forum activity and the cause of action.

## V.

Having decided that the defendant is subject to in personam jurisdiction under Virginia's long arm statute on two of the plaintiff's claims the question remains whether such an assertion of jurisdiction meets minimum due process standards under the Fourteenth Amendment. In *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the Supreme Court stated the following criterion for determining whether a permissible basis for in personam jurisdiction exists:

. . . due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

A later formulation of the constitutional standard, displaying a more restrictive emphasis, was set forth in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958):

. . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

█ It is clear to the Court that subjecting this defendant to suit in Virginia on those causes of action which arose from defendant's activity as plaintiff's legal counsel in Virginia clearly falls within the perimeters of due process. Defendant certainly availed itself of the privilege of conducting activities within the forum state and directly invoked the benefits and protection of its laws. The constitutionality of the application of Virginia's long arm statute has been upheld in situations where the contacts have been far more minimal. *Ajax Realty Corp. v. J. F. Zook, Inc.,* 493 F.2d 818, 822 (4th Cir. 1972); *Olin Mathieson Chemical Corp. v. Molins Organizations, Ltd.,* 261 F.Supp. 436 (E.D.Va.1966); *Etzler v. Dille and McGuire Manufacturing Co.,* 249 F.Supp. 1 (W.D.Va.1965); *Jackson v. National Linen Service Corp.,* 248 F.Supp. 962 (W.D.Va.1965). Defendant will not be denied due process of law by being required to defend in Virginia plaintiff's claims of legal malpractice and breach of contract.

Since the Court has held that under Virginia's long arm statute the defendant cannot be subjected to in personam jurisdiction on the conspiracy and conversion claims, the Constitutional issue does not present itself as to these causes of action. However, the Court seriously doubts that plaintiff could meet its burden under the Constitutional standard set by *International Shoe, McGee, Hanson* and *Shaffer.* Defendant's limited segment of activity in Virginia in 1973 cannot cause it to be subject to jurisdiction on claims which are unrelated to that activity and which accrued years later. Although the attorney-client relationship between defendant and plaintiff is common to all these claims, it is not a necessary element of the conversion and conspiracy causes of action. The relationship itself cannot form the basis for personal jurisdiction. *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. 1228. We therefore conclude that if a variance exists between statutory and constitutional standards for in personam jurisdiction (a question on which we express no opinion) a dismissal of the conversion and conspiracy counts would be compelled under the later as well.

## VI.

Since the conversion and conspiracy claims have been dismissed for lack of in personam jurisdiction, defendant's motion to the extent it seeks further relief in regard to these counts of the complaint is dismissed as moot.

## VII.

The only remaining issue is raised by that part of defendant's motion which seeks dismissal for plaintiff's failure to join Boothe as an indispensable party. The test for determining indispensability under Rule 19 [5] has been summarized in *Sandobal v. Armour and Co.*, 429 F.2d 249, 257 (8th Cir. 1970) as follows:

(1) Can relief be afforded to the plaintiff without the presence of the other party?

(2) Can the case be decided on its merits without prejudicing rights of the other party?

Plaintiff in this action seeks money damages due to the defendant's alleged breach of contract and legal malpractice. It is clear that plaintiff can be afforded complete relief without joinder of Boothe as a party defendant. Plaintiff has made no claims against Boothe and no distinct subject matter in the nature of a fund or other res exists in which Boothe has an interest that will be affected by this litigation. However, the complaint when considered in its factual context can be read to imply that Boothe was a joint tort-feasor in legal malpractice with Semmes, an agent for Semmes in its breaching the contract and committing the tort and a co-obligor on a contract made between Boothe and Semmes for the benefit of plaintiff. Even if these jural characterizations were proved in the case at bar, it remains reasonably clear that an adjudication of the dispute between plaintiff and Semmes cannot adversely affect Boothe. Although a strict categorical approach to the question of what constitutes a "necessary" or "indispensable" party under Rule 19 was disapproved by the Supreme Court in *Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) it is evident that the traditional rule that joint tort-feasors and contractual co-obligors are not indispensable parties is largely the result of just such a pragmatic approach as the Court advocated in *Provident Bank, supra*. Such a classification is justified in that such persons are nearly always jointly and severally liable thereby eliminating prejudice through non-joinder both to parties to the action and unjoined participants in the alleged wrongdoing. The rule regarding joint tort-feasors and joint and several obligors makes legal sense and it therefore has survived the 1966 reformulation of Rule 19 and that rule's interpretation in *Provident Bank, supra*, two years later.[6]

---

**5.** Rule 19 provides in pertinent part:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

**6.** *See, Prescription Plan Service Corp. v. Franco*, 552 F.2d 493, 498 (2d Cir. 1977); *Wolgin v. Atlas United Financial Corp.*, 397 F.Supp. 1003, 1012–13 (E.D.Pa.1975) aff'd, 530 F.2d 966 (3d Cir. 1976); *Jett v. Phillips & Assoc.*, 439 F.2d

 As noted earlier the only possible theories for liability on Boothe's part are breach of contract and legal malpractice. Since any liability of Semmes and Boothe, if joined as codefendants, would be joint and several on either theory of recovery there can be no prejudice to Boothe in not being joined. Even if Semmes were held liable as principal for the breach of contract or malpractice of Boothe as its agent such an adjudication could not collaterally estop Boothe, a non-party from contesting liability in any future litigation. Contrary to defendant's assertion, a determination adverse to Semmes can have no "precedential" value as to Boothe. Plaintiff has given no indication that he seeks to hold defendant liable for any but its own acts, but should plaintiff advance an agency theory of liability such an eventuality would not make Boothe, as agent, an indispensable party. *Milligan v. Anderson,* 522 F.2d 1202, 1205 (10th Cir. 1975); *Wylain, Inc. v. Kidde Consumer Durable Corp.,* 74 F.R.D. 434, 436 (D.Del.1977); *Virginia Electric and Power Co. v. Bunker Ramo Corp.,* 61 F.R.D. 366, 368 (E.D.Va.1973); *Cass v. Sonnenblick-Goldman Corp.,* 287 F.Supp. 815, 818 (E.D.Pa.1968); *Lind v. Canada Dry Corp.,* 283 F.Supp. 861, 863 (D.Minn.1968).

The case of *Pauley v. Pauley,* 58 F.R.D. 386 (D.Md.1972) cited by defendant is clearly distinguishable since unlike the present case the joinder of the party there in question did not affect diversity of citizenship and deprive the court of subject matter jurisdiction. Should defendant feel apprehensive that it may be held liable as principal for the acts of Boothe, it is free to bring Boothe into the action as third party defendant under Rule 4(f), Fed.R.Civ.P. *See, e. g., Debbis v. Hertz Corp.,* 269 F.Supp. 671, 684 (D.Md.1967). Such a course of action would protect defendant without depriving the Court of subject matter jurisdiction over this diversity action.

 Lastly, the Court finds wholly unconvincing defendant's argument that Rule 7(D) of the local rules of court (requiring foreign attorneys to be associated with local counsel in order to appear and conduct cases in the Eastern District of Virginia) effectively makes Boothe, as local counsel, an indispensable party. The purpose of this rule is to give the Court effective control of court business by assuring that attorneys involved in litigation will be available and subject to the Court's authority. Such a rule cannot alter the jural relationships among Boothe, Semmes and plaintiff or serve to make an otherwise dispensable party indispensable.

For the foregoing reasons, the Court concludes that Boothe is not an indispensable party and therefore defendant's motion to the extent it seeks dismissal of the Complaint on this ground is DENIED.

### VIII.

It is ORDERED that this action be dismissed as to Ambler H. Moss, Lawrence Perin, Rignal W. Baldwin and Thomas J. S. Waxter.

It is further ORDERED that Counts III and IV of the Complaint be dismissed and the action shall proceed on Counts I and II of the Complaint against the remaining defendants.

---

987, 990 (10th Cir. 1971): reaffirming rule that joint and several obligors are not indispensable parties. *See generally,* 3A Moore's Federal Practice ¶ 19.10 at 2341 (2d ed. 1948).

*See, Herpich v. Wallace,* 430 F.2d 792, 817 (5th Cir. 1970); *Wylain, Inc. v. Kidde Consumer Durables Corp.,* 74 F.R.D. 434, 436 (D.Del. 1977); *U. S. v. Kates,* 419 F.Supp. 846, 856 (E.D.Pa.1976); *Dunlop v. Beloit College,* 411 F.Supp. 398, 402 (W.D.Wis.1976); *Hall v. E. I. DuPont DeNemours, Inc.,* 345 F.Supp. 353, 383 (E.D.N.Y.1972); *Powell v. Kull,* 329 F.Supp. 193, 195 (M.D.Pa.1971); *Letmate v. Baltimore & Ohio Railroad,* 311 F.Supp. 1059, 1063 (D.Md.1970): upholding the rule that joint tort feasors are not indispensable parties. *See generally,* 3A *Moore's* Federal Practice ¶ 19.07[1] at 2226 (2d ed. 1948).