PRESENT: All the Justices

VIRGINIA LYNN MERCER, ADMINISTRATOR
OF THE ESTATE OF CLIFTON WOOD

                                      OPINION BY
v. Record No. 180358           JUSTICE STEPHEN R. McCULLOUGH
                               February 21, 2019

M. LORI-BELLE MacKINNON

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

Virginia Lynn Mercer appeals from a judgment of the Circuit Court of Loudoun County granting a motion to dismiss for lack of personal jurisdiction. We conclude that the facts do not establish personal jurisdiction over the defendant under the only basis presented to us, the "persistent course of conduct" clause of Virginia's long arm statute. Code § 8.01-328.1(A)(4). Consequently, we will affirm the judgment below.

BACKGROUND

The facts are drawn from the allegations in the complaint. Mercer is the daughter of Clifton Wood and the step-daughter of Eleanor Grace Wood. Eleanor was a dual citizen of the United States and Canada. Lori-Belle MacKinnon, a Canadian citizen and resident, is Eleanor's niece.

In 2014, Mercer served as the primary caretaker for Clifton and Eleanor. In December 2014, MacKinnon traveled to Virginia and, while Mercer was occupied with settling Clifton in a nursing home facility, removed Eleanor to Canada. While in Virginia, MacKinnon had a new power of attorney drawn up for Eleanor. This power of attorney named MacKinnon as the attorney-in-fact for Eleanor. MacKinnon then used this power of attorney to remove Clifton's name from one or more bank accounts that had been jointly held by Eleanor and Clifton. MacKinnon thus took control of Eleanor's retirement accounts. MacKinnon also used the power

of attorney to have herself named as the death beneficiary on at least one of the couple's bank accounts.

Mercer and MacKinnon each filed petitions with the Prince William County Circuit Court seeking to be appointed as the guardian and conservator for Eleanor. The cases were consolidated. The court entered an interim order granting Mercer control over certain assets and granting MacKinnon control over other assets and bank accounts. Both Mercer and MacKinnon were required to provide regular accountings to a guardian *ad litem* appointed by the Court. MacKinnon never challenged the jurisdiction of the Prince William County Circuit Court and appeared in that court regularly, by counsel and in person.

Following a trial on the merits, the Prince William County Circuit Court appointed Mercer as the guardian for Eleanor. The Court bifurcated the issue of conservatorship on the grounds that it necessarily touched on the rights of Clifton, and therefore the Court required input from a separate guardian *ad litem* who it appointed to represent him. MacKinnon filed an appeal to this Court, challenging the final order appointing Mercer as the guardian for Eleanor. This Court refused the petition for appeal on March 15, 2016.

In May 2015, MacKinnon filed an action in Canada seeking to have herself declared guardian and conservator for Eleanor. On July 20, 2016, Eleanor died intestate. Mercer is the administrator of her estate.

In June 2017, Mercer filed a complaint in the Circuit Court of Loudoun County against MacKinnon.* Mercer, relying on a number of legal theories, alleged that MacKinnon had illegally used assets from accounts belonging to Eleanor and Clifton to fund the parallel litigation

---

\* Mercer also sued the Canadian law firm that handled the litigation on MacKinnon's behalf in Prince Edward Island. Mercer settled her claim against the law firm, and we granted her motion to withdraw the appeal as to the law firm.

2

in Canada.  In response, MacKinnon filed a "plea in bar and motion to dismiss for lack of personal jurisdiction by special appearance."  She asserted that "[t]he allegations made by Mercer in the Complaint do not support or authorize the permitted exercise of *in personam* jurisdiction over MacKinnon under any enumerated provision of the Long-Arm Statute."

In the circuit court, Mercer advanced several grounds for her contention that the court could properly exercise personal jurisdiction over MacKinnon.  She cited two provisions of the long arm statute, Code §§ 8.01-328.1(A)(1) and (A)(3), contended that the fact that this was a probate matter allowed the court to proceed and, finally, because MacKinnon had voluntarily subjected herself to the jurisdiction of Virginia through her actions in the Prince William County Court, asserted that the court could exercise jurisdiction over MacKinnon.  After hearing argument on the motion, the circuit court granted MacKinnon's motion to dismiss, finding that "the allegations do not permit the exercise of *in personam* jurisdiction over her as a non-resident of Virginia and as a Canadian citizen."  From the bench, the court indicated that Code § 8.01-328.1(A)(4) constituted the only viable ground for personal jurisdiction over MacKinnon, but the court concluded that the facts did not support a finding that MacKinnon engaged in a "persistent course of conduct in Virginia."

ANALYSIS

Mercer's sole assignment of error is that the circuit court "erred in ruling that MacKinnon did not engage in a 'persistent course of conduct' in the forum jurisdiction and was not therefore subject to the [circuit] court's *in personam* jurisdiction."  No assignment of error relies on any other provision of law.  Accordingly, although Mercer raised alternative grounds for the exercise of personal jurisdiction over MacKinnon in the circuit court proceedings on the plea in bar and motion to dismiss, we confine our review on appeal to whether the circuit court could exercise

3

jurisdiction over MacKinnon under the "persistent course of conduct" provision of the long arm statute, Code § 8.01-328.1(A)(4). *See Yeatts v. Murray*, 249 Va. 285, 290 (1995) ("'The purpose of assignments of error is to point out the errors . . . on which appellant intends to ask a reversal of the judgment, *and to limit discussion to these points*.'" (emphasis added)).

Virginia's "long arm" statute, Code § 8.01-328.1, is based on the Uniform Interstate and International Procedure Act drafted by the National Conference of Commissioners on Uniform State laws in 1962. *See* Uniform Interstate & International Procedure Act § 1.03(a)(4), 13 U.L.A. 285 (1962). Code § 8.01-328.1(A)(4) provides that

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
>
> . . . .
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

"Under well-established principles, an issue of statutory interpretation is a pure question of law" that this Court reviews de novo. *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Id.*

The plain language of subdivision (A)(4) of Code § 8.01-328.1 yields several conclusions. First, "the tortious injury must be caused by the act or omission outside the state and not by the persistent course of conduct within." *Willis v. Semmes, Bowen & Semmes*, 441 F. Supp. 1235, 1242 (E.D. Va. 1977); *see also Founding Church of Scientology v. Verlag*, 536 F.2d 429, 432 (D.C. Cir. 1976) (construing identical statutory language). That prerequisite is

4

present here, because Mercer alleges that MacKinnon committed a series of acts in Canada that caused an injury in Virginia.

Second, the term "persistent" is noteworthy because "it prescribes the kind of conduct necessary to support jurisdiction." *Willis*, 441 F. Supp. at 1241. "Persistent" has been defined as "existing for a long or longer than usual time or continuously: enduring, lingering." Webster's Third New International Dictionary 1686 (2002). "At a minimum, the plaintiff must prove that the defendant maintained some sort of ongoing interactions with the forum state." *Willis*, 441 F. Supp. at 1242.

Third, "[t]he word 'other' is also significant in that it refers back to regularly doing business or soliciting business as persistent courses of conduct, thereby giving an indication by example of what that phrase is intended to mean." *Id.* at 1241-42.

Although we have not previously construed the phrase "persistent course of conduct," persuasive authority from other courts sheds some light on the scope and duration of the conduct that is necessary to justify the assertion of personal jurisdiction over a litigant. For example, in *Willis*, the plaintiff sued a Maryland law firm for conversion of a note. *Id.* at 1240. The firm had represented the plaintiff in a Virginia bankruptcy action. The conversion allegedly took place in Maryland. *Id*. at 1241. The United States District Court held that it lacked personal jurisdiction over the firm for this claim. *Id.* at 1242. The Court reasoned that "while [the] defendants' actions in Virginia [during the bankruptcy proceeding] satisfied the first three subsections of Virginia's long arm statute, this limited, discrete quantum of activity does not amount to 'persistent conduct' in this state within the meaning of the statute." *Id.*; *see also Louis v. Flagship Airlines, Inc.*, No. 98-1753, 1999 WL 525947 (1st Cir. Feb. 5, 1999) (unpublished; for

table disposition, see 181 F.3d 79) (two letters and two phone calls do not constitute a "persistent course of conduct").

Other cases illustrate the type of conduct that satisfies the statute. For example, in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 126 (2nd Cir. 2002), the Second Circuit held that a law firm's rental of an apartment for eight years in Manhattan, which was used both for vacations and firm business and was claimed by the firm as a business expense, was a persistent course of conduct that allowed the suit to proceed in a New York district court for a tort that allegedly occurred in Puerto Rico. The Fourth Circuit has held that "bi-monthly mailings of [a trade] journal and annual mailings of its national directory, and of 'a call to convention' to its 1,150 Virginia members, and annually distribut[ing] operating manuals for state councils and local groups including those in Virginia" were sufficient to constitute a persistent course of conduct. *First Am. First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511, 1514 (4th Cir. 1986); *see also Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373-74 (4th Cir. 1985) (receipt of 57 orders for analyses from customers in Virginia, which were sent to Virginia and paid for by Virginia customers sufficient to establish a persistent course of conduct in Virginia).

Mercer relies on the following facts to establish a persistent course of conduct:

(1)  Sometime in December 2014, MacKinnon came to Virginia and removed Eleanor to Canada. *Complaint* ¶12.

(2)  MacKinnon had a new power of attorney drawn up for Eleanor naming MacKinnon as the attorney-in-fact for Eleanor, and used the power of attorney to remove Clifton's name from one or more bank accounts that had been jointly held by Eleanor and Clifton, and to take control of Eleanor's retirement accounts. *Complaint* ¶13.

(3)  MacKinnon used the power of attorney to have herself named as the death beneficiary on at least one of the couple's bank accounts. *Complaint* ¶15.

6

(4) MacKinnon filed a petition in the Prince William County Circuit Court, seeking appointment as Eleanor's guardian and conservator. *Complaint ¶16.*

(5) MacKinnon availed herself of the jurisdiction of the Prince William County Circuit Court voluntarily and appeared in that Court regularly, by counsel and in person, on various matters, including a trial on the merits. *Complaint ¶18.*

(6) MacKinnon appealed the judgment rendered by the Prince William County Circuit Court to this Court. *Complaint ¶20.*

These allegations do not rise to the level of "persistent course of conduct" within the meaning of the statute. MacKinnon's pre-litigation contact with Virginia consisted of traveling to Virginia, having certain legal documents drawn up, and returning with her aunt to Canada. Her other contact with Virginia was for the limited purpose of litigating a single case. MacKinnon's contacts with Virginia did not "exist[] for a long or longer than usual time or continuously," and they were not "enduring" or "lingering." Webster's Third New International Dictionary at 1686. Similar to the law firm in *Willis*, MacKinnon's contacts with Virginia constituted a "limited, discrete quantum of activity." 441 F. Supp. at 1242. These facts also contrast with the cases, noted above, where the courts found activity sufficient in scope and duration to rise to the level of a persistent course of conduct.

## CONCLUSION

Because MacKinnon's activities were not sufficient in scope and duration to constitute a "persistent course of conduct" within the intendment of Code § 8.01-328.1(A)(4), the judgment of the circuit court granting dismissal of the actions for lack of personal jurisdiction will be affirmed.

*Affirmed.*

7