JOANNE JOHNSON, as Administratrix of the Estate of ULYSSES JOHNSON, Deceased, et al., Plaintiffs, and MARY SZCZERBA, as Administratrix of the Estate of NICK SZCZERBA, Deceased, Respondent, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, et al., Defendants, and MICHIGAN TOOL COMPANY, Appellant. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Third-Party Plaintiff-Respondent, *v.* SKIDMORE, OWINGS & MERRILL, et al., Third-Party Defendants, and MICHIGAN TOOL COMPANY, Third-Party Defendant-Appellant.

First Department, December 3, 1964.

*John M. Aherne* of counsel (*James J. Taylor* with him on the brief; *Bigham, Englar, Jones & Houston,* attorneys), for appellant.

*Emile Z. Berman* of counsel (*Leonard Sheft* and *Paul M. Brown* with him on the brief; *Emile Z. Berman* and *A. Harold Frost,* attorneys), for Equitable Life Assurance Society of United States, respondent.

*Kramer & Dillof,* attorneys for Mary Szczerba, as administratrix, respondent.

*Per Curiam.* Third-party defendant Michigan Tool Company appeals from an order denying its motion to dismiss the third-party complaint, in this wrongful death action, under CPLR 320 (subd. [b]) and 3211 (subd. [a], par. 8). The issue is whether Michigan Tool as a nondomiciliary located in the State of Michigan and not doing business in the State of New York is subject to the personal jurisdiction of the courts of this State, based on service outside the State, in an action arising from wrongful deaths occurring in this State.

The order should be affirmed.

The statute (CPLR 302, subd. [a], par. 2) permits the court to exercise personal jurisdiction over the nondomiciliary third-party defendant for a tortious act committed in the State. The resultant harm allegedly caused by the defective speed reducer component manufactured by Michigan Tool and included in the assembled electric scaffold, the fall of which precipitated plaintiffs' decedents to their deaths, is, in the law of negligence, the tort. Consequently, there has been the alleged commission of a tort in the State, and therefore of a tortious act (*Feathers* v. *McLucas,* 21 A D 2d 558; *Gray* v. *American Radiator & Std. Sanitary Corp.,* 22 Ill. 2d 432). In this respect this case does not involve the primary question presented in *Singer* v. *Walker* (21 A D 2d 285) where the harm (tort) occurred in Connecticut, and it was necessary to isolate a tortious act, prior to the harm, as having its situs in New York.

On the other hand, because Michigan Tool did not send its product directly into this State, the problem presented in the *Gray* case (*supra*) and the *Feathers* case (*supra*) reoccurs. This distinction was noted in the *Singer* case (*supra*) with respect to the *Gray* case, and not passed upon only because it was not necessary to the decision in that case. Now that it is required to reach that question the court is in accord with the views expressed in the *Gray* and *Feathers* cases (*supra*), subject, however, to the view that the statute should, and indeed must, be construed to limit its application within the governing constitutional restrictions.

There remains, then, only the question whether, if the statute (CPLR 302, subd. [a], par. 2) is thus applied, constitutional

limitations of due process are satisfied. They are. The component manufactured by Michigan Tool was a substantial item priced after discounts at the amount of $1,798.20. It was, along with a number of identical items, purchased by a New Jersey manufacturer for inclusion in the completed electric scaffolds sold to and to be used in the new " glass wall " skyscrapers in New York City. This was known to Michigan Tool, which, in connection with the sale and installation of the completed products had occasion to inspect at least one of the installations in New York City, albeit not the one involved in this case. These sales and services, even if indirect because of the intervention of the New Jersey assembler, amount to substantial contacts satisfying constitutional standards (*International Shoe Co.* v. *Washington*, 326 U. S. 310; *McGee* v. *International Life Ins. Co.*, 355 U. S. 220). Indeed, they satisfy even the more restrictive standards incorporated into the Uniform Interstate and International Procedure Act (§ 1.03, subd. [a], par. [4]) in which it is provided that personal jurisdiction over a nondomiciliary may be exercised with respect to a cause of action arising from " causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state ". (See 9B U. L. A., 1963 Supp., p. 75 *et seq.*, including Commissioners' Note, in which, *inter alia*, it was observed that the more restrictive standards included do not require the broad application permitted under the Illinois statutes in the *Gray* case, *supra*.)

It is not necessary, therefore, to the decision of this case to determine whether the reach of CPLR 302 (subd. [a], par. 2) would extend to any component in an assembled machine, however trivial in function or cost, and without the remotest expectation or reasonable forseeability by the maker that it would be introduced into this State, and whether such a reach would satisfy constitutional limitations based on fairness (*International Shoe Co.* v. *Washington, supra*; *McGee* v. *International Life Ins. Co., supra*). It suffices that in this case the contacts with this State were substantial, were indirectly productive of substantial revenue to Michigan Tool, and the use of its product in this State was within the ambit of its lively expectations and wishes. (See, generally, 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.10; Restatement, Conflict of Laws, 2d [Tent. Draft No. 3 (1956)], § 84 incl. comments; § 91a; case note [*Singer* v. *Walker*, 21 A D 2d 285] 64 Col. L. Rev. 1354–1357.)

Accordingly, the order, entered June 2, 1964, denying the motion of third-party defendant-appellant Michigan Tool Company to dismiss the third-party complaint should be affirmed, with costs to third-party plaintiff-respondent.

BREITEL, J. P., VALENTE, McNALLY, STEUER and WITMER, JJ., concur.

Order, entered on June 2, 1964 unanimously affirmed, with $30 costs and disbursements to third-party plaintiff-respondent.