AJAX REALTY CORPORATION,
Appellant,

v.

J. F. ZOOK, INC., et al., Appellees.
No. 71-2145.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1972.

Decided Dec. 12, 1972.

J. Cameron Mann, Norfolk, Va. (Maurice Steingold and Steingold, Steingold & Friedman, Norfolk, Va., on brief), for appellant.

E. Preston Grissom, Norfolk, Va. (Allan S. Reynolds and White, Reynolds, Smith & Winters, Norfolk, Va., on brief), for appellees.

Before WINTER, BUTZNER, and RUSSELL, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff, Ajax Realty Corporation (Ajax), appeals from the district court's decision granting the motion of defendant, Durell Products, Inc. (Durell), to dismiss and to quash service of process. The appeal raises questions concerning the interpretation and constitutionality of Virginia's Long Arm Statute.[1] Va. Code Ann. § 8-81.2 (1964).[2]

Durell, a corporation of the State of Washington, manufactured unglazed window frames which C & S Sales Company, a Colorado corporation, purchased and sold to Ajax, a Virginia corporation.

---

1. The district court applied the Virginia statute in determining whether it had acquired in personam jurisdiction. F.R.Civ.P. 4(e).

2. § 8-81.2 When personal jurisdiction over person may be exercised.—
   (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's
   (1) Transacting any business in this State;
   (2) Contracting to supply services or things in this State;
   (3) Causing tortious injury by an act or omission in this State;
   (4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State;
   (5) Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use, consume, or be affected by the goods in this State, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; _ _ _.
   See generally Note, The Virginia "Long Arm Statute," 51 Va.L.Rev. 719 (1965).

Ajax installed the frames in its apartment complex in Virginia. The frames leaked, occasioning property damage to the apartments. Ajax sued Durell and others alleging both breach of warranty and tort liability. Jurisdiction of the subject matter was based on diversity of citizenship. 28 U.S.C.A. § 1332.

With regard to the jurisdictional issue, the district court found the following facts: Durell transacts nearly all its business in the Pacific Northwest. It has never been domesticated in Virginia. Durell has never maintained any manufacturing, sales, storage, or other business facility in Virginia. It has never advertised, solicited, or contracted for any sales in Virginia. It has never directly distributed its products in Virginia. It has never maintained a distributor, jobber, agent, or other representative in Virginia.

Durell manufactured the frames in issue in Washington. It sold the frames to C & S Sales in Denver, Colorado for $37,000. C & S Sales then sold the frames to Ajax in Virginia. Durell was not involved in the sale by C & S to Ajax. C & S is not Durell's agent. At the request of C & S, Durell shipped a sample frame to Chicago to facilitate preparations for glazing. Again at the request of C & S, Durell shipped the manufactured, but unglazed, frames directly to Ajax in Virginia. After the frames leaked, Durell sent a representative to Virginia to examine them in an attempt to alleviate the problem.

## I.

Ajax invokes several sections of the long arm statute. We shall discuss only §§ 8–81.2(a)(1) and 8–81.2(a)(5).[3]

1. Sec. 8–81.2(a)(1) provides that a court may exercise personal jurisdiction if the claim arises from a corporation's "transacting any business in this State." At issue is whether § 8–81.2(a)(1)

should be construed to embrace Durell's sole act of shipping the frames to Virginia. In Haynes v. James H. Carr, 4 Cir., 427 F.2d 700, 704, cert. den. 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970), we held that § (a)(1) was not a single act statute. In other words, a foreign corporation must conduct more than a single business transaction in Virginia to be subject to jurisdiction under the provisions of that statute.

However, in John G. Kolbe v. Chromodern Chair Co., 211 Va. 736, 180 S.E. 2d 664, 668 (1971), the Supreme Court of Virginia, stressing the word "any," construed § (a)(1) as "a single act statute requiring only one transaction in Virginia to confer jurisdiction." The Court reasoned that: (1) "the purpose of Virginia's long arm statute is to assert jurisdiction over non-residents who engage in some purposeful activity in this State to the extent permissible under the due process clause"; (2) since it would not offend traditional due process notions of fair play and substantial justice to subject a foreign corporation to Virginia jurisdiction where its one business transaction "invoked the benefits and protection of the laws of" Virginia, § (a)(1) should be construed to reach such a case.

■ Chromodern is technically distinguishable from the instant case. The foreign corporation there had significantly stronger contacts with Virginia than did Durell: the foreign corporation there maintained a manufacturer's representative for Virginia and neighboring states, it maintained a non-stocking dealer in Virginia, it had contracted for other sales through these agents in Virginia, and the contract in question was with the Virginia non-stocking dealer. Thus, Chromodern does not compel a similar conclusion here. Moreover, the Court's construction of § (a)(1) as a single act statute must properly be

---

3. Sec. 8–81.2(a)(5) addresses injury arising from a breach of warranty in the sale of goods outside Virginia. Sec. 8–81.2(a)(4) addresses tortious injury arising from an act or omission outside Virginia. There is a cer-

tain ambivalence in plaintiff's position as to whether it is asserting a tort claim or a warranty claim. We shall treat it as the latter.

termed dictum. Nevertheless, mindful of our obligation under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny to follow state interpretation of state law, we adopt the Virginia Supreme Court's construction of § (a)(1) as a single act statute. *Haynes, supra,* insofar as it is inconsistent, is superseded by state decisional law and should no longer be followed.

■ Even under the state construction of § (a)(1), however, Durell cannot be said to have transacted any business in Virginia. Durell's sole contact with Virginia was its shipment of the frames to Virginia, FOB Washington State. Durell shipped the frames to Virginia either as an accommodation to C & S or as C & S's agent for the purpose of shipment. C & S prepaid the cost of shipment. As the district court found, Durell sold the frames to C & S, a Colorado firm. It had no initial involvement in C & S's resale to Ajax in Virginia. There is no evidence that Durell knew at the time of its sale to C & S that C & S would resell the frames to a Virginia concern, or that C & S would request Durell to ship them directly to Virginia. On the other hand, since C & S's business apparently involved the resale of manufactured frames—that is, C & S did not purchase frames for installation in its own facilities—it is not unreasonable to assume that Durell knew that C & S would resell them somewhere.

■ If Durell had, as originally planned, simply shipped the frames to C & S in Colorado, Virginia could not assert jurisdiction even under a single act statute. To rule otherwise would be to hold that a manufacturer transacts business in every state in which each of its independent distributors deals. There-

fore, if Virginia can assert jurisdiction here under § (a)(1), the rule of the case would be that where a non-resident manufacturer ships its products directly to the ultimate purchaser, rather than to a non-resident independent distributor, either as an accommodation to the distributor or as its agent for purposes of shipment, then it has transacted business in Virginia. The Virginia Supreme Court has not gone so far in construing § (a)(1), see *Chromodern, supra,* and therefore we choose not to, especially since there is another basis for asserting jurisdiction.[4]

■ 2. Sec. 8–81.2(a)(5) provides that a court may exercise personal jurisdiction if the claim arises from the corporation's "causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State, when he might reasonably have expected such person to use, consume, or be affected by the goods in this State, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State." After C & S requested Durell to ship the frames to Virginia, Durell possessed a firm expectation that the frames would be used in Virginia. Although Durell did not regularly do or solicit business, or pursue a persistent course of conduct, in Virginia, we consider that the $37,000 which it derived from Ajax's use of the frames in Virginia constitutes "substantial revenue." *See* Jackson v. National Linen Service, 248 F.Supp. 962 (W.D.Va.1965).

■ Durell stresses that the $37,000 contract price represents only one-half of one percent of its total sales. Although percentage of total sales may be a factor to be considered, it cannot be

4. "The cases seem unanimous in holding, whether as a matter of statutory interpretation or of due process, that the shipment of goods into a state, without more, does not constitute transaction of any business. Nor was the shipment of goods plus merely 'incidental activity' such as billing or negotiating thereafter in the state concerning defects in the goods held to be transaction of business in one case."
51 Va.L.Rev., supra at 737. See Erlanger Mills v. Cohoes Fibre Mills, 239 F.2d 502 (4 Cir. 1956).

822

dispositive, for a small percentage of the sales of a corporate giant may indeed prove substantial in an absolute sense.[5] On the other hand, it is difficult to identify an absolute amount which *ipso facto* must be deemed "substantial." In *Jackson,* supra, the court held that a foreign corporation which had $25,000 in direct sales in Virginia, and an undetermined sum in indirect sales, derived "substantial revenue" for purposes of § (a)(5). *Id.* at 964–965. Johnson v. Equitable Life Assur. Soc'y, 22 A.D.2d 138, 140, 254 N.Y.S.2d 258, 260 (1st Dep't. 1964) (dictum), is further indicative of a trend toward liberal construction of "substantial revenue" provisions.[6] In *Johnson,* the sale of a $1,798.20 component part by one non-resident to another for ultimate use in a New York skyscraper was said to satisfy the "substantial revenue" test of New York's equivalent of § 8–81.2(a)(4). Without purporting to draw a hard and fast line, we hold that Durell's $37,000 contract price constitutes sufficiently substantial revenue to subject it to Virginia's jurisdiction under § (a)(5).

This conclusion is bolstered by our further conclusion, infra, that this assertion of jurisdiction does not offend the due process clause of the fourteenth amendment. This reasoning does not put the cart before the horse, since Virginia has held that its long arm statute exercises the full extent of jurisdictional power permitted by the due process clause. *Chromodern,* supra at 667 of 180 S.E.2d. Carmichael v. Snyder, 209 Va. 451, 456, 164 S.E.2d 703, 707 (1968). In other words, in Virginia, if the exercise of jurisdiction is constitutional, the long arm statute contemplates it

## II.

Since we hold that Virginia may exercise jurisdiction over Durell, we must consider the constitutionality of that exercise. Due process requires only that the foreign corporation "have certain minimum contacts with [the State] . . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L.Ed. 95 (1965). McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Although the sum which Durell derived was substantial, it arose out of a rather solitary and fleeting contact with Virginia—its shipment to Virginia of frames sold to a Colorado firm.[7] Moreover, it is problematical whether Durell realistically is in a position to invoke the benefit of the laws of Virginia. Cf. *Chromodern,* supra. But the day is long past when the "minimal contact" necessary to satisfy due process is to be equated with the traditional concept of doing business. Accordingly, we conclude that Durell enjoyed a sufficient financial benefit from the use of its frames in Virginia so that it would not be unreasonable to hold that it must account in Virginia for alleged defects, at least in a case like this where the statute requires, and Durell ultimately had, a reasonable expectation that the frames would be used in Virginia. See *Jackson,* supra. Virginia is the most logical and convenient locus to try the case. See *McGee,* supra, at 223 of 355 U.S., 78 S. Ct. 199. *Cf.* Hanson v. Denckla, 357 U. S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). As the Supreme Court ex-

5. Conversely, a relatively small absolute amount might be deemed "substantial" where it constitutes a significant percentage of a small corporation's total sales.

6. See 51 Va.L.Rev. at 749.

7. We are aware of authority in this Circuit indicating that under some circumstances a State cannot constitutionally assert jurisdiction over a foreign corporation where that corporation's sole contact with the State is

the shipment of its goods into the State. See n. 4, supra; Golden Belt Manufacturing Co. v. Janler Plastic Mold Co., 281 F.Supp. 368, 370–371 (M.D.N.C.1967), aff'd 391 F.2d 266 (4 Cir. 1968). These cases did not address the issue in the context of a "substantial revenue" statute, although, of course, the parameters of due process remain, regardless of the terms of the statutory authority.

plained in *McGee, supra,* at 222–223 of 355 U.S., at 201 of 78 S.Ct.:

> [A] trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporation . . . . In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent . . . . At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

We therefore hold that the application of § (a)(5) to Durell on these facts does not violate the due process clause of the fourteenth amendment.[8]

The order of the district court dismissing Durell and quashing service of process as to it is reversed, and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

8. Durell does not contend that the method of service of process, as distinguished from the basis for it, violates the due process clause. Durell had adequate notice of the suit and sufficient time to prepare its defenses.