**GORDONSVILLE INDUSTRIES, INC., Plaintiff,**

v.

**AMERICAN ARTOS CORPORATION and Industrial Boiler Co., Inc., Defendants.**

**AMERICAN ARTOS CORPORATION, Third Party Plaintiff,**

v.

**GEA LUFTKUHLERGESELLSCHAFT, Third Party Defendant.**

**No. 79–0075(C).**

United States District Court, W.D. Virginia, Charlottesville Division.

Sept. 30, 1982.

David G. Sutton, Andrew Perkins, Charlottesville, Va., Leesburg, Va., George Coakley, Cleveland, Ohio, for plaintiff.

Jay T. Swett, Charlottesville, Va., Philip B. Morris, William R. Allcott, Jr., Richmond, Va., for defendants.

TURK, Chief Judge.

Plaintiff, Gordonsville Industries, Inc., a Virginia corporation, instituted this action alleging defective design, negligence, and breach of warranty and breach of contract against the defendants, American Artos Corporation, a North Carolina corporation, and Industrial Boiler Co., Inc., a Georgia corporation. Subject matter jurisdiction is founded on diversity of citizenship. 28 U.S.C. § 1332(a)(1). American Artos (Artos) filed a third party complaint, essentially seeking indemnification, against a German corporation, GEA Luftkuhlergesellschaft (GEA), on March 25, 1981. The third party complaint and summons was reissued on July 31, 1981.

Personal jurisdiction over the non-resident third party defendant, GEA, is asserted under the Virginia long arm statute, Va.Code Ann. § 8.01–328.1, with process served in compliance with the requirements of the Hague Convention. This matter is before the court on GEA's motions to dismiss for lack of personal jurisdiction. GEA, the third party defendant, contends that no proper basis has been shown to establish personal jurisdiction against it. Third party plaintiff, Artos, has served two sets of jurisdictional interrogatories upon and received answers from GEA. The court has reviewed all of the documents filed in this case and has determined that it is now ripe for a resolution of the issue.

This case arises out of plaintiff's (Gordonsville Industries, Inc.) efforts to acquire

an industrial heater and tenter system to dry textiles manufactured at its plant. To acquire this system, plaintiff entered into a contract with American Artos Corporation, one of the defendants in this case, for the design, construction and installation of a gas-fired oil circulation heater and tenter system. Artos, in turn, contracted with GEA, the third party defendant, for the design of the hot oil boiler, an allegedly integral part of the textile drying system. GEA subcontracted the actual construction of the boiler to Industrial Boiler Company, a Georgia corporation, also a defendant in the original complaint.

Third party defendant, GEA, asserts two grounds in support of its motion to dismiss the third party complaint: 1) that this court lacks *in personam* jurisdiction over GEA and 2) that the court should give deference to the forum selection clause of the contract entered between Artos and GEA.

## JURISDICTION OVER THE PERSON

GEA challenges Artos's ability to invoke the jurisdiction of this court pursuant to the Virginia long arm statute. "The issue before the court is the scope of that statute: 1) whether asserting *in personam* jurisdiction over the defendants is contemplated by the statute, and 2) if so, whether to assert jurisdiction would violate the due process clause of the Fourteenth Amendment." *Viers v. Mounts,* 466 F.Supp. 187, 189–90 (W.D.Va.1979). The particular sections of the long arm statute asserted as providing the basis for *in personam* jurisdiction over GEA are Va. Code § 8.01–328.1(A)(4) and (5) (Repl. Vol. 1977). Those sections state, in pertinent part:

§ 8.01–328.1 When personal jurisdiction over person may be exercised.—A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of

conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when he might reasonably have expected such person to use, consume or be affected by the goods in this Commonwealth, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

Va. Code Ann. § 8.01–328.1(A)(4–5) (Repl. Vol. 1977).

Artos contends that personal jurisdiction is appropriately established under Va. Code § 8.01–328.1(A)(4). This provision provides for personal jurisdiction over non-resident defendants who have caused "tortious injury in this State by an act or omission outside this State." Third party plaintiff, Artos, alleges that GEA's affirmative acts outside of Virginia contributed to Gordonsville's losses in 1977 and 1978. Section 8.01–328.1(A)(4), however, only authorizes personal jurisdiction over a non-resident tortfeasor if such tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State." Plaintiff has presented no evidence to satisfy two of these alternative statutory requirements.

Artos contends that GEA's activity in the present case satisfies the third alternative requirement in subsection (A)(4) that the out-of-state corporation "derives substantial revenues from goods used or consumed or services rendered" in the Commonwealth. As the Fourth Circuit has observed, "it is difficult to identify an absolute amount which *ipso facto* must be deemed 'substantial.'" *Ajax Realty Corporation v. J.F. Zook, Inc.,* 493 F.2d 818, 822 (4th Cir. 1972). In *Ajax,* the leading case construing the

substantial revenue provision of the Virginia Long Arm Statute, a Washington state corporation, Durell, manufactured and sold window frames to a Colorado corporation. Ajax sustained property damage due to the leaking frames. Durell contested the court's jurisdiction. Durell had never been domesticated in Virginia nor had it ever maintained any manufacturing, sales, storage or other business facility. Moreover, that out-of-state corporation had never advertised, solicited, or contracted for any sales in Virginia nor distributed any of its products in this state. The only contacts that Durell had with the State of Virginia were 1) it had shipped the manufactured frames directly to Ajax in Virginia, 2) after the frames leaked, it sent a representative to examine them in an attempt to alleviate the problem and 3) it derived $37,000 in revenue from its sale of the frames to C & S (the Colorado corporation). [C & S then sold the frames to Ajax.] *Id.* at 820. The *Ajax* court found that the $37,000 contract price constituted sufficiently substantial revenue to subject it to Virginia's jurisdiction under § (A)(5).[1]

■ GEA received approximately $13,955.00 for services it performed pursuant to the contract it entered with Artos to design and manufacture the hot oil boiler. Since there is no "absolute amount which *ipso facto* must be deemed 'substantial.'", this court must ascertain whether the revenue received by the third party defendant, GEA, rises to the level the Virginia General Assembly envisioned as substantial and whether that amount of revenue conjoined with other facts of this case provide the requisite "minimum contacts" with the forum state to comport with due process. Certain factors of the "substantial revenue" tests have been established: 1) that revenue derived from sales, and not profits, must be substantial, 2) that the revenue may be derived from a single transaction; and 3) that the sale itself need not take place in

Virginia so long as the goods are used or consumed in this state. *Obtaining Jurisdiction Over Corporations In Virginia,* 12 U. of Richmond L.Rev. 369, 386 (1978). One fact that may be considered is the percentage of total sales of the non-resident corporation which occur in Virginia.[2] *See Ajax Realty Corp. v. J.F. Zook, Inc.,* 493 F.2d 818 (1972).

■ In both *Ajax* and *Jackson,* the amounts constituting substantial revenue were $37,000.00 and $25,000.00 respectively. Those amounts are significantly greater than the $13,955.00 contract price agreed by GEA and Artos. While most aspects of the "substantial revenue" test are met, this court is not convinced that the revenue received by GEA evidenced the regularity, persistency, or substantiality of contact which would adequately satisfy the alternative requirements of subsections (4) and (5) of the above Virginia long arm statute.

■ Moreover, this court believes that the exercise of *in personam* jurisdiction over GEA would violate due process requirements. While both *Ajax* and *Jackson* withstood due process analysis, the additional contacts with Virginia attendant in those cases are not present here. In *Ajax,* the Fourth Circuit found that the defendant corporation had directly shipped the window frames to Virginia, sent a representative to Virginia to inspect the alleged defects and clearly evidenced a reasonable expectation that the frames would be used in Virginia. The non-resident defendant in *Jackson* had numerous direct sales to Virginia customers as well as indirect sales to independent companies who resold the defendant's product to in-state consumers. Quite clearly, those defendants had purposefully availed themselves "of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Artos, on the other hand, has failed to show how GEA has comparably availed itself of the privilege of conducting activi-

---

1. *Jackson v. National Linen Service Corp.,* 248 F.Supp. 962 (W.D.Va.1965) ($25,000.00 annual sales in Virginia considered substantial revenue.)

2. The percentage of GEA's total sales that occurred in Virginia has not been sufficiently developed to assist the court in its analysis.

ties in Virginia. Artos has only shown that GEA derived $13,955.00 for the design and manufacture of the component and that GEA was "certainly aware" that the boiler was used in Virginia after the 1977 repairs.[3]

■ Nor is personal jurisdiction appropriately established under Va. Code § 8.01–328.1(A)(5) as third party plaintiff contends. Subsection (A)(5) provides for personal jurisdiction over non-resident defendants who have caused injury in Virginia "to any person by breach of warranty expressly or impliedly made in the sale of goods outside the State." Artos alleges that, if it is found in breach of a warranty, the probable cause of the injury would have resulted from GEA's breach of warranties with regards to contractual obligations to satisfactorily design and manufacture an oil circulation heater. To satisfy the statutory prerequisites, however, Artos must also show that when the sale of goods was made outside the State that GEA "might reasonably have expected such person to use, consume, or be affected by the goods in [Virginia]." Artos has failed to demonstrate that GEA reasonably expected Artos or Gordonsville Industries, Inc. to use the oil circulation heater in Virginia at the time the sale was made by GEA. At best, Artos presents facts which imply that GEA became aware of the use of the oil circulation heater in Virginia after the sale was made and some time after the heater was in operation. Specifically, GEA should have become aware of the use of the heater in Virginia when they were requested and did in fact send a representative to assist in the repair and possible redesign of the boiler in Thomasville, Georgia at the Industrial Boiler Co., Inc. plant in June and July of 1977. GEA received no revenue for its assistance in the repair and redesign of the boiler; rather, GEA issued a draft to Artos in the amount of $8,594.89, allegedly for the costs of repairs. The foreseeability that is critical to due process analysis is not, however, "the mere likelihood that a product will find its way into the forum State.

Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Subsection (A)(5)'s additional prerequisite is identical to the alternative requirements of subsection (A)(4); namely that such non-resident defendant "regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed in this State." This final prerequisite has been discussed at length above. Plaintiff has presented no evidence to satisfy two of these alternative statutory requirements. The plaintiff has also failed to convince this court that revenue derived from the sale of the design and manufacture of the circulation heater was substantial enough to withstand due process analysis. Particularly, Artos has failed to show that GEA's conduct and connection with Virginia are such that it should have reasonably anticipated being haled into federal district court in Virginia. Since GEA has insufficient "contacts, ties or relations" with the State of Virginia, *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1940), it would in addition to being beyond the limits of the court's power, be unfair to impose upon GEA the burdens of litigating in a distant or inconvenient forum.

## FORUM SELECTION CLAUSE

An alternative ground for dismissing this action is asserted by GEA. GEA contends that the forum selection clause of the contract entered between GEA and Artos should be given effect. That clause provides that "[i]n case of suit, it is agreed that the place for litigation shall be the Amtsgericht (Civil Court) in Bochum, Germany." In 1972, the Supreme Court espoused the view of American courts toward forum selection clauses.

**3.** Artos presents correspondence evidencing that GEA's agent, Hahne, who was sent to Industrial Boiler Company's plant in Georgia to redesign the boiler, assisted in shipping the repaired boiler directly back to Gordonsville Industries in Virginia.

■ The present view, in light of present-day commercial realities and expanding international trade, is that "forum selection clauses should control absent a strong showing that it should be set aside." *The Bremen v. Zapata Offshore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). In *Bremen,* the court held that the correct approach is to specifically enforce the forum clause unless the party opposing enforceability clearly shows "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* While the court in *Bremen* stated that "this is the correct doctrine to be followed in district courts sitting in admiralty," *Id.* at 13, 16, 92 S.Ct. at 1914, 1916, "the court relied, in support of the rule it accepted, on cases that are not so limited, and that indicate that this is the proper doctrine to apply to forum selection clauses generally." 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3803 at 15 (1976); *see also Wellmore Coal Corp. v. Gates Learjet Corp.,* 475 F.Supp. 1140, 1143 (W.D.Va. 1979); *Hoes of America, Inc. v. Hoes,* 493 F.Supp. 1205, 1208 (C.D.Ill.1979); *accord* Restatement (Second) of Conflict of Laws § 80 (1969).

The *Bremen* court listed several compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power should be given effect. Some of the reasons listed include 1) the nature of the transaction between companies of two different nations and its impact upon international commerce, 2) the concerted effort of the parties involved to eliminate uncertainties and great inconvenience by agreeing in advance of a forum acceptable to both parties and 3) how that effort to eliminate uncertainties was an indispensable element in international trade, commerce and contracting. *Bremen, supra* 407 U.S. at 13–15, 92 S.Ct. at 1914–1916. Those reasons for enforcing forum selection clauses are also apparent in the present case. GEA, a German corporation, entered into a contract with an American corporation. An unequivocal statement as to the choice of forum in the event of suit was included in the written contract executed by GEA and Artos. By including this provision in the contract, the two parties eliminated the uncertainties and great inconveniences that both parties could confront by being forced to adjudicate the contract in a forum familiar to both parties. The factual situation of this case presents a classic example of what the parties sought to avoid. GEA, unaware of where the oil circulation heater it designed and had manufactured would be used, had the foresight to avoid being haled into an unfamiliar and distant court.

The *Zapata* court spoke to the suggestion that a forum clause, even though it is freely bargained for and contravenes no public policy of the forum, may nevertheless be "unreasonable" and unenforceable if the chosen forum is seriously inconvenient for the trial. That court held that any inconvenience a party would suffer by being forced to litigate in the contractual forum was clearly foreseeable at the time of the contracting. *Bremen, supra* at 16, 92 S.Ct. at 1916.

> In such circumstances it should be incumbent on the party seeking to escape his contract to show that the forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.

*Id.* at 18, 92 S.Ct. at 1917.

■ Applying the *Zapata* test and rationale to the facts of this case, the court concludes that third party plaintiff, Artos, has not clearly shown that enforcement would be unreasonable and unjust. Artos has at no time contended that the contract provisions are invalid for such reasons as fraud or overreaching.

Artos claims that enforcement would be unreasonable and unjust for several reasons. First, Artos claims that the costs involved in filing suit in Germany will prohibit them from having their day in court. Mere inconveniences or additional expense is not the test of unreasonableness since it is assumed Artos received consideration for these things under the contract. *See Anas-*

*tasi Bros. Corp. v. St. Paul Fire & Marine Ins. Co.,* 519 F.Supp. 862 (E.D.Pa.1981); *Central Contracting Co. v. C.E. Youngdahl & Co.,* 418 Pa. 122, 133–34, 209 A.2d 810, 816 (1965). Second, the third party plaintiff asserts that since the witnesses reside in the southeastern United States and the physical evidence is in Virginia it would be unreasonable to enforce the clause. The fact that plaintiff's are residents of southeastern United States and that some of the physical evidence is in Virginia, while suggesting that an indemnification action in Germany may be inconvenient, is still insufficient to rise to the level of unreasonableness envisioned by the Court in *Zapata. See Wellmore Coal Corp. v. Gates Learjet Corp.,* 475 F.Supp. 1140, 1145 (W.D.Va.1979).

Artos contends as a third reason that enforcement would contravene a strong public policy of the forum in which the suit is brought. While the implications of forum selection on the law to be applied is an important consideration in determining whether the choice of forum provision should be enforced, this court has been presented with no evidence from Artos that the German forum would 1) choose to apply German law to the controversy and 2) if so, whether the application of the different law would deprive Artos of a fair hearing on its possible indemnification action. *See generally,* J. Gilbert, *Choice of Forum Clause in International and Interstate Contracts,* 65 Ky. L.J. 1, 43–66 (1976). This court is not persuaded that the law to be applied by the Amtsgericht Civil Court in Bochum, Germany would be unfair to Artos. It is also contended that to enforce the clause will unreasonably force Artos to both defend the present action filed against it by the plaintiff, Gordonsville Industries, Inc., and, if the plaintiff prevails, travel to Germany with an indemnity claim against GEA. Such a possibility however, was clearly foreseeable when the contract was negotiated and executed. The possibility that Artos may need to bring an indemnification action in Germany is insufficient to sustain its burden of "clearly showing" that enforcement would be unreasonable and unjust. *See Roach v. Hapag-Lloyd,* 358 F.Supp. 481 (N.D.Cal.1973).

 As an alternative ground against enforcement, Artos contends that the clause at issue is not mandatory but was open to interpretation. *See Coface v. Optique Du-Monde, Ltd.,* 521 F.Supp. 500 (S.D.N.Y. 1980); *International Association of Bridge v. Koshi Const. Co.,* 474 F.Supp. 370 (W.D. Pa.1979). The language used by Artos and GEA, "(i)n case of suit, it is agreed that the place for litigation shall be the Amtsgericht (Civil Court) in Bochum, Germany," is hardly equivocal. A plain reading of the clause suggests only one interpretation, that if suit were brought with regards to the contract, it must be brought in Germany. Consequently, application of the *Zapata* rule is appropriate. That analysis reveals that Artos has not shown that it will be deprived its day in court. Consequently, the third party defendant's motion to dismiss is granted. *See* Restatement (Second) of Conflicts of Laws § 80 comment a (1969).