**TERRY, INC., Appellant,**

v.

**SALES SERVICE MACHINE TOOL COMPANY, et al., Respondents.**

No. C7-87-584.

Court of Appeals of Minnesota.

Nov. 3, 1987.

Review Denied Jan. 15, 1988.

Steven G. Potach, Phillips, Gross & Aaron, P.A., Minneapolis, for appellant.

Thomas J. Blackmar, Blackmar and Rehm, Burnsville, for respondents.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and RANDALL, JJ.

## OPINION

LESLIE, Judge.

Appellant obtained a default judgment against respondents in Maryland for $27,166.71. Appellant docketed the judgment in Dakota County, Minnesota, and $3,100 was collected through a sheriff's levy. Respondents then moved the district court to vacate the judgment, challenging the personal jurisdiction of the Maryland court over respondents. The district court granted the motion, vacating the foreign judgment and ordering the return of all sums seized by appellant pursuant to the foreign judgment. Appellant seeks reinstatement of the foreign judgment. We reverse.

## FACTS

Appellant Terry, Inc. (hereinafter Terry) is a corporate resident of the State of Maryland. Respondent Sales Service Machine Tool Co. (hereinafter Sales Service) is a corporation headquartered in Minnesota. Respondents K.H. and L.P. Reiland are officers of Sales Service. In May–June of 1977, the parties executed a "Memorandum of Agreement" whereby Terry was designated the "representative" of the "principal," "the Keller Division of SSMTC."

Terry, as Sales Service's representative, was to notify Sales Service of invitations to submit bids for government projects. Sales Service would prepare a bid according to the specifications of the project, and Terry would relay that bid to the contractor. If successful, Terry would enter into a contractual agreement with the government and order shipment from Sales Service, which would then ship the goods directly to the government. Terry would bill the contractor, collect payment, and forward to Sales Service the money received, less the agreed upon commission. Sales Service agreed to furnish Terry with catalogs, price lists, purchase orders, bonus schedules and promotional literature. All inquiries and correspondence from that region were forwarded to Terry, which was required to notify telephone, telegraph and postal employees that Terry would accept all communications on behalf of respondents. Terry was permitted to quote catalog prices to prospective customers, but all orders were subject to approval by Sales Service. Terry also agreed to make service calls, visit clients, and handle complaints.

During the seven years of their business association, Terry made 39 sales totaling $700,000 for Sales Service, only $175 of which constituted sales to customers in Maryland. All monies were billed and collected by the Maryland office.

This suit arises out of a breach of contract, whereby Sales Service apparently failed to deliver goods contracted for, re-

sulting in penalties against Terry and other damages.

Sales Service and the Reilands were served with notice of the claim and entered into negotiations with Terry. Negotiations were unsuccessful. Neither Sales Service nor the Reilands appeared to defend themselves in Maryland, and a default judgment for $27,166.71 was entered against them. The judgment was docketed in Dakota County, Minnesota, and $3,100 was collected through a sheriff's levy.

Sales Service and the Reilands then elected to contest the Maryland court's jurisdiction and the Dakota County District Court vacated the judgment. From this order Terry appeals.

### ISSUE

Did the trial court err in vacating a foreign judgment for lack of personal jurisdiction?

### ANALYSIS

Orders vacating appealable judgments are themselves appealable in this state. *People's Ice Co. v. Schlenker,* 50 Minn. 1, 52 N.W. 219 (1892) *cited in Moberg v. Moberg,* 347 N.W.2d 791, 794 (Minn.1984).

The law is well settled in this area—as both sides acknowledge—and this case, therefore, hinges upon the court's analysis of the facts. This court will not reverse the trial court's findings unless they are clearly erroneous. Minn.R.Civ.P. 52.01.

In determining whether or not Maryland properly exercised in personam jurisdiction over the respondents, it is necessary to consider two independent criteria:

1. Did the Maryland trial court properly comply with the requirements of Maryland's jurisdictional statute, MD. CTS. & JUD.PROC.CODE ANN. § 6–103 (1974)?

2. If so, does such an exercise of jurisdiction offend the due process clause of the United States Constitution?

*See Kreisler Manufacturing Corp. v. Homstad Goldsmith, Inc.,* 322 N.W.2d 567, 569–70 (Minn.1982); *Curry v. McIntosh,*

389 N.W.2d 224, 227 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. Aug. 20, 1986).

### I.

Maryland's "Long-arm" jurisdictional statute provides:

(b) In general—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State; * * *

MD.CTS, & JUD.PROC.CODE ANN. § 6–103.

If an agency relationship existed between the parties, the business activities of Terry will be attributable to Sales Service, establishing personal jurisdiction over them. *Snyder v. Hampton Industries, Inc.,* 521 F.Supp. 130, 141 (D.Md.1981), *aff'd. Mem.,* 758 F.2d 649 (4th Cir.1985). Whether or not an express or implied agency relationship exists is to be determined by the agreement and conduct of the parties. *Id.* at 142.

While an absolute right to control conduct may be necessary for tort liability by the principal, a lesser standard is sufficient for jurisdictional purposes. *See* Restatement (Second) of Agency § 3 (1958).

In *Snyder,* the court's finding of an agency relationship for jurisdiction purposes was predicated upon the following factors:

1) designation of plaintiffs as the principal's "exclusive representative";

2) provision of promotional literature and purchase orders by the principal for the representative;

3) forwarding of correspondence and inquiries to the representative;

4) principal holding plaintiff out to the world as its sales representative.

*Id.* at 143.

Similar factors are present in this case and it is clear both from the agreement between the parties and from their

conduct over the years that an agency relationship existed.

Personal jurisdiction in Maryland may be predicated upon a single isolated transaction. *McLaughlin v. Copeland,* 435 F.Supp. 513, 528 (D.Md.1977). In *Snyder,* a Maryland court found a non-resident defendant had transacted business within the state where an agent had undertaken "sales-related activities" within the state from which the non-resident defendant gained direct and substantial economic benefit. *Snyder,* 521 F.Supp. at 146.

The activities of Terry over the seven years of the parties' business relationship were most certainly sales-related. Terry facilitated sales by Sales Service by notifying them of requests for bids, receiving inquiries and correspondence on their behalf, making service calls and client visits, writing purchase orders, billing clients, collecting payments and otherwise conducting the sales and sales-related activities necessary to any business.

Even though only $175 worth of sales were made to buyers located within the State of Maryland, Terry conducted sales-related activities for Sales Service from within the state. Terry acted almost as a branch office for Sales Service which benefited through $700,000 worth of sales over a seven year period. Sales Service's economic benefit was a direct and substantial result of Terry's sales-related activities. The nature and duration of the parties' business relationship indicate that they were properly subjected to the jurisdiction of the foreign court.

■ Individual respondents L.P. and K.H. Reiland argue that they are only corporate representatives who at all times relevant to this cause of action were dealing exclusively in their representative capacities and, therefore, that they are not subject to personal jurisdiction in Maryland nor liable for the judgment awarded by that court. Appellant maintains that the Reilands never disclosed their representative capacities during the course of their relationship. Appellant believed it was dealing with Keller Manufacturing, an unincorporated association with the Reilands as principals. Appellant further alleges that Keller Manufacturing was not incorporated in Minnesota during all times relevant to this cause of action.

Ultimate responsibility for the breach of contract claim is a matter to be resolved at trial, not a jurisdictional question. As long as there is a plausible claim of liability against the Reilands, personal jurisdiction under Maryland law is proper.

## II.

Due process in a jurisdictional sense, requires that a defendant not present within a state have sufficient "minimum contacts" with the forum state "such that maintenance of the suit" will not "offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).

One test for evaluation of whether sufficient contacts exist is to determine if:

> there be some act by which the defendant purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

■ In this case, respondents' activities within the foreign jurisdiction are fairly extensive. Sales Service, through their agent, maintained an office within the State of Maryland from which business activities were conducted resulting in gross sales of $700,000 in 7 years. While only $175 of that amount was actually derived from a sale to a Maryland buyer, all sales were made by Terry in Maryland, and billed and serviced through the state. In fact, Terry was the named contract purchaser of all $700,000 worth of products sold. Other courts have determined that much smaller amounts constituted substantial revenue within the meaning of the rule. *See Ajax Realty Corp. v. J.F. Zook, Inc.,* 493 F.2d 818, 822 (4th Cir.1972) *cert. denied,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.

**572**

2d 687 (1973) ($37,000); *Mark v. Obear and Sons, Inc.*, 313 F.Supp. 373, 375–6 (D.Mass. 1970) ($5,000); *Johnson v. Equitable Life Assurance Society*, 22 A.D.2d 138, 140, 254 N.Y.S.2d 258, 260 (1st Dept.1964), *aff'd.*, 18 N.Y.2d 933, 277 N.Y.S.2d 136, 223 N.E.2d 562 (1966) ($1,798.20 in dictum).

Additionally, Sales Service maintained a seven-year-long business relationship with Terry for the purpose of soliciting business in Maryland and surrounding states. Such a protracted business relationship certainly exceeds the "one single, isolated transaction" threshold found to be a sufficient contact under the due process clause in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

Moreover, many of the contracts entered into by Terry and the federal government were overseen by the Baltimore Defense Contract Administration Services Management Area, further establishing that respondents availed themselves of the protections and benefits of Maryland law and lending further support for Maryland's exercise of jurisdiction over them.

Finally,

an agency relationship that contemplates some measure of control over the forum state actor "results in 'the defendant's purposefully avail[ing] itself of the privilege of conducting activities within the forum state.'" [*Rose v. Silver*] 394 A.2d [1368] at 1371 [ (D.C.1978) ], *quoting Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239.

*Snyder*, 521 F.Supp. at 142. An agency relationship such as the one which existed here necessitates submission to the jurisdiction of a foreign court.

Thus we conclude that the exercise of jurisdiction over respondents by the State of Maryland did not offend the due process clause of the Federal Constitution.

### III.

█ Since Maryland's exercise of *in personam* jurisdiction comports with Maryland law and constitutional due process, the Maryland judgment is entitled to full faith and credit in Minnesota.

Article IV, Section I of the United States Constitution provides:

Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State.

Respondents challenge the execution of the Maryland judgment solely on jurisdictional grounds. Since the jurisdictional questions posed above are resolved in favor of the appellant, the Maryland judgment must be reinstated and appellant may proceed to collect the remainder of the damages still due and owing.

### DECISION

The trial court erred in vacating the Maryland judgment.

Reversed.